WARREN ET AL., APPELLANTS, *v.* SENECAL ET AL., RESPONDENTS.

(No. 5,495.)

(Submitted June 19, 1924. Decided July 11, 1924.)

[228 Pac. 71.]

*Water Rights — Diversion by Trespass not Appropriation — When Water not Appurtenant to Land—Equity—Findings —Evidence.*

Equity—Findings—When Conclusive.
   1.   The findings in an equity case (water right suit) will not be reversed on appeal unless the appellant can show a decided preponderance of the evidence against them.

Water Rights—When Water not Appurtenant to Land.
    2.  Water used on land not owned by the appropriator does not become appurtenant to the land, and therefore the subsequent grantee of the land does not acquire title to the water.
Same—Diversion of Water by Trespass Does not Constitute Appropriation.
    3.  Diversion of water must be by lawful means, mere use of it, even though for a beneficial purpose, if made by trespass, not constituting an appropriation.
Equity—Court may Disbelieve Uncontroverted Testimony, When.
    4.  A court of equity may disbelieve the testimony of witnesses though not directly controverted, if under the surrounding facts and circumstances it feels warranted in doing so.

*Appeal from District Court, Powell County; Geo. B. Winston, Judge.*

ACTION by John Warren and others against Delia Senecal and others.  From a judgment for defendants, plaintiffs appeal.  Affirmed.

*Messrs. Day & Choate* and *Mr. S. P. Wilson,* for Appellants, submitted briefs; *Mr. I. W. Choate* and *Mr. Wilson* argued the cause orally.

*Messrs. Walsh & Nagle* and *Messrs. Keeley & Keeley,* for Respondents, submitted an original and a supplemental brief; *Mr. J. A. Walsh* and *Mr. Raymond T. Nagle* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by the plaintiffs and G. B. Jeffers as administrator of the estate of Rufus Johnson, deceased, from a judgment awarding the defendants Delia Senecal and Felix Senecal certain ditch and water rights from Trout Creek in Powell county (formerly a portion of Deer Lodge county).

Ditch No. 2, or the Johnson ditch, which is a material subject of this controversy, was dug in the early days, no one knows just when.  It taps the right or westerly bank of Trout Creek about half a mile above where the old stage road from Blackfoot City to Helena crosses that stream, and runs thence

first in a southwesterly and then in a northwesterly direction to Snowshoe gulch. Trout Creek and Snowshoe Creek are tributaries of the Little Blackfoot River. From what follows it would seem that this ditch was dug to convey water from Trout Creek for placer mining purposes in Snowshoe gulch, which was the scene of considerable mining activity in the latter 60's.

As early as October 16, 1865, W. S. Newell & Co. made out the following document which they filed for record March 10, 1866: "We, the undersigned, have contracted to buy from J. Maxwell, B. Maxwell, Dough Coontz, a ditch and water located on Trout Creek about one mile southeast of Snowshoe gulch. We, the undersigned, claim sufficient water to fill our ditch to be taken into Snowshoe gulch in Deer Lodge county, Montana Territory."

Whether this ditch was ever constructed, whether it eventually became the Johnson ditch, probably never will be known. The document was offered in evidence to show the existence of a water right prior in time to the "second water right" claimed in 1879. But that the Johnson ditch was in existence prior to 1879 there cannot be any doubt.

A deed was introduced in evidence showing that in October, 1868, Edward Smith, of Blackfoot City, for a consideration of $1,500 sold to Rufus Johnson an undivided one-fourth interest in "1,600 feet of mining ground situated in Snowshoe gulch and bar, Franklin district, being 600 feet of discovery, 400 feet above and 600 feet below discovery," and also "one water ditch leading from Trout Creek, starting at a point about one-half mile above the wagon road." On June 6, 1870, B. B. McClure, for a consideration of $6,000, sold to Rufus Johnson an undivided one-third interest in mining ground situated on the west side of Snowshoe gulch, immediately above the hydraulic claims of McClure, Johnson & Co., with certain ditches and water rights, among others being "one ditch leading from Trout Creek about one-half mile above the wagon road leading

from Blackfoot City to Helena, and leading to said mining ground''; and on November 4, 1870, E. W. Pryor, for a consideration of $4,000, sold to Johnson an undivided one-third interest in the same mining ground and ditches, using the same language employed in the McClure deed to convey the ditch and water right.

Now, on the third day of January, 1874, Johnson, for a consideration of $9,000, conveyed to John Hughes, George M. Barnard and Bartholomew Feist ''1,600 feet of placer ground in Snowshoe gulch, being 600 feet of discovery ground and 400 feet immediately above and adjoining said placer ground and 600 feet immediately below and adjoining said placer ground'' (reserving to himself certain ground for which he had applied for patent), and also certain ditches and water rights, including ''that certain water ditch and water right thereto belonging, taking water from Trout Creek at a point about one-half mile above the wagon road and leading to the mining ground hereinbefore described and conveyed.'' This water right, then, being well known to Johnson, probably was in his mind as the first water right of Trout Creek when on the third day of July, 1879, he assumed to locate and claim, as stated in his notice of appropriation filed in the office of the county clerk on that day and recorded in Book 1 of Water Rights Locations at page 114, ''all the waters of Trout Creek, Deer Lodge county, M. T., at a point about 100 yards above the old stage road leading to Clark's Station, said water is to be carried to Snowshoe gulch to be used there for mining purposes, and is to be conveyed from said point above described to Snowshoe gulch by means of a ditch. This is a second water right on the above-named Trout Creek.'' This was the only notice claiming a water right from Trout Creek ever filed by Johnson.

It is interesting to note here that Hugh Reese filed for record August 11, 1883, at 8:00 o'clock A. M. (the county clerks got up early in those days), a notice reading as follows:

"Blackfoot City, Deer Lodge County.

"This is to certify that I have this day taken up the third water right in Trout Creek, including 200 inches more or less for irrigating purposes.

"Aug. 7, 1883.

"HUGH REESE."

The Johnson ditch divided upon the bench overlooking Snowshoe gulch, one prong going to the left, the other to the right. In early days it seems the water was conveyed from the top of the bench to the placer ground in Snowshoe gulch by means of an iron pipe, the water having been used for hydraulic purposes and to augment the Snowshoe water in the bedrock flume. When active mining closed in the gulch the evidence does not show, nor does it show what became of the mining ground and water rights of Hughes, Barnard and Feist. If the facts were disclosed, probably they would tell the familiar story of the early-day placer miner—when his claim "played out," undauntedly and hopefully he set out for other and still richer diggings, regardless of the old. As to this further inquiry need not be made. We note merely that Johnson's title to the ditch and water he conveyed to Hughes, Barnard and Feist disappeared in 1874.

All parties to the action claim through Johnson. As the lower court decided in favor of the defendants Delia and Felix Senecal, it will be convenient to trace their title first. Johnson conveyed to C. J. Lightall September 16, 1889, "his whole and undivided interest in a second water right located on Trout Creek about six miles north of Elliston, a further description of said ditch may be found in the records of Deer Lodge county, the same having been recorded." Lightall obtained from the United States in 1897 a patent for the northeast quarter of section 10, township 10 north, range 7 west, Whether the "second water right" was diverted from Trout Creek by the Johnson ditch or by ditch No. 4, which will be mentioned hereafter, it is quite certain that the water was used for irrigation upon that tract of land. By mesne conveyances

Delia Senecal became the owner of the Lightall lands with appurtenant water rights; also of the Hugh Reese land and water rights. Rufus Johnson in 1905 obtained from the United States a patent for what is known as the Johnson homestead described as the south half of the southeast quarter and lots 4 and 5 of section 4, same township, containing 160.35 acres. These lands lie below the Johnson ditch and apparently were irrigated to some extent by that ditch and also by ditch No. 4. This land and appurtenant water rights, if any, Johnson mortgaged to Larabie Brothers, who foreclosed and the title thereto eventually passed to the defendant Felix Senecal in May, 1908.

Johnson also claimed other land in section 4, but it seems John Warren in 1908 contested the right of Johnson thereto with the result that Warren eventually obtained patent to what is now called the Warren homestead, while Johnson was granted a patent to placer ground lying in Snowshoe gulch described as lot No. 42, survey 425, embracing 62 acres more or less.

Ditch No. 4, also called the Lightall ditch, an old ditch but undoubtedly junior to the Johnson ditch, taps Trout Creek on its right or westerly bank about a quarter mile above the stage road. It runs substantially parallel with the Johnson ditch for over a mile, then is obliterated, appearing again near the westerly line of the northeast quarter of the southeast quarter of section 4, which is the southerly forty-acre tract of John Warren's homestead entry. From that point the ditch ran southwesterly into what is known as the Johnson homestead. It is probable that it was used to irrigate a portion of the above-mentioned Warren forty as well as a portion of the Johnson homestead.

Johnson, on December 18, 1911, conveyed an undivided one-fourth interest in survey No. 425 to Jeremiah Collins and James Deering, "together with an undivided one-fourth interest in and to all improvements, appurtenances and water rights thereto belonging or in anywise appertaining," and on Octo-

ber 17, 1918, he conveyed to the defendants Adeline Warren
and Mary Jenkins an undivided one-half interest in survey
No. 425, "also one-half interest in and to the water right used
in connection therewith, known as the Trout Creek ditch and
water right, being water taken from Trout Creek to Snowshoe
Creek."

At the time of the trial the defendant John Warren showed
himself entitled to purchase from the owners thereof the one-
quarter interest conveyed by Johnson to Collins and Deering.
The other one-quarter interest remains in the Johnson estate.

Substantially, the foregoing indicates the state of the title
to the ditch and water rights involved so far as the records
disclose.  We shall discuss some features of the evidence later.
In their complaint the plaintiffs alleged that they "are now,
and they and their predecessors in interest for more than forty
years last past have been, the owners, in the possession and
entitled to the possession of a certain irrigating ditch and
water right out of a stream commonly known and designated
as Trout Creek in Powell county, Montana, which said ditch
is taken out of said stream at a point about 250 yards above
the old stage road leading from Clark's Station, and conveys
water from said point of diversion to and upon certain agri-
cultural lands and mining premises belonging to the plaintiffs
above named hereinafter particularly described, notice of ap-
propriation of which said water right is of record in Book 1
of Water Right Locations, page 114, of the records in the office
of the county clerk and recorder of Powell county, Montana,
to which record reference is hereby made for a more particular
description of said water right; that the said plaintiffs and
their predecessors in interest have had the right to and have
used the water, water ditch and water right hereinabove men-
tioned and described for the irrigation of their said lands
hereinafter described and for mining puiposes ever since and
prior to the year 1879, except when interfered with by the un-
lawful acts of said defendants."

The plaintiffs alleged themselves to be the owners of survey No. 425, the Warren homestead and other lands. They alleged that the defendant Jeffers as the administrator of the estate of Rufus Johnson, deceased, was a proper party plaintiff but he had refused to join as a plaintiff, and consequently was made a defendant. They further alleged that the defendants had no right, title or interest whatsoever in or to the ditch or water right mentioned in the complaint.

Answering, the defendants Senecal denied all of the material allegations of the complaint, except they admitted their claim to the ditch and water right. They pleaded affirmative defenses and counterclaims in which they asserted title not only to the Johnson ditch and water right but also to the Lightall and Reese ditches and water rights.

The defendant Jeffers, as administrator, admitted the plaintiffs to be the owners of an undivided three-fourths interest in and to the ditch and water right described in the complaint but alleged "the fact to be that the estate of Rufus Johnson, deceased, is the owner of and entitled to the use and possession of an undivided one-fourth interest in and to said ditch and water right"; admitted that the plaintiffs were the owners of an undivided three-fourths interest in survey No. 425. The defendant administrator for an affirmative defense, cross-complaint and counterclaim, among other things, alleged that the "estate of Rufus Johnson is now and it and its predecessors in interest ever since January 1, 1870, has been the owner of, in the possession of, and entitled to the possession of, an undivided one-fourth interest" in survey No. 425, which "is partly mining ground and partly agricultural land"; alleged that on or about the 1st of January, 1870, Johnson and his predecessors in interest "for the purpose of irrigating the lands aforesaid and for placer mining, and for other useful, beneficial purposes," appropriated 250 inches of the waters of Trout Creek by means of ditches constructed to divert said water and claimed the use of the same at all times since. By stipulation this cross-complaint and counterclaim were deemed denied.

In his brief counsel for the administrator asserts the right of the estate is of the same origin as the right of the plaintiffs.

By the judgment the defendants Delia and Felix Senecal were decreed to be the owners of the Johnson, Lightall and Reese ditches; and it was adjudged that the plaintiffs and the administrator "are not now and were not at the times of the commencement of this action and neither of them is now nor was either of them at the time of the commencement of this action the owner of or entitled to the use or possession of any of the waters of said Trout Creek as against the defendants Delia Senecal and Felix Senecal, or either of them."

It was demonstrated that neither Johnson nor anybody else ever took a ditch from Trout Creek about 100 yards above the stage road. The court found the appropriation of July 3, 1879, was made through the Johnson ditch. With this counsel for plaintiffs and the administrator take issue; they contend the appropriation was made through ditch No. 4, the Lightall ditch. But if it be a fact that the appropriation was made through ditch No. 4, we do not see that it avails the plaintiffs or the administrator in any way. It is quite certain that Lightall began the use of the Johnson ditch for irrigating his land as early as 1889. Thereafter he and his successors in interest continued its use, and increased its use, from year to year. The court found that the defendants are the owners of and entitled to the use and possession of the Johnson ditch. Upon the proof the plaintiffs and the estate are not in a position to challenge this finding, for they have not shown that they have any interest in it.

The burden was upon the plaintiffs and the estate to show [1] by a decided preponderance of evidence that the court's finding as to the ownership of the Johnson ditch is erroneous. This they have failed to do. This court will not reverse the findings of the lower court, unless the evidence clearly preponderates against them. (*Steiner* v. *McMillan,* 59 Mont. 30, 195 Pac. 836; *Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451.)

While plaintiffs in their complaint expressly base their cause

of action upon the appropriation made by Johnson on July 3, 1879, they were unable to trace any title to it. The administrator's position was no better. He was unable to connect the estate with the 1879 right and he also failed to connect with any 1870 right. The plaintiffs, finding themselves unable to prove the allegations of their complaint, asked leave to amend the same by alleging their appropriation to have been made through ditch No. 2 and to strike out the reference to the appropriation claimed in the complaint and also to date their claim as of 1870, but the court did not permit the amendment. No error is assigned on this score.

It is probable that Johnson used water either through the Johnson ditch or the Lightall ditch upon the southerly Warren forty when the land was in his possession. Probably he irrigated to a small extent upon the land included in his own homestead which lies south and west of the Warren southerly forty. Assuming that which the evidence does not show, that after 1879 Johnson made an appropriation of water through the Johnson ditch for irrigating upon the land in the Warren homestead and in his own homestead, still the plaintiffs are not in a position to avail themselves of any such appropriation. [2] Johnson did not own the land embraced in the Warren homestead. It was government land and the water he used thereon was not appurtenant to it. When Warren got the land away from Johnson, he did not obtain the water right with it. (*Smith* v. *Denniff*, 24 Mont. 20, 81 Am. St. Rep. 408, 60 Pac. 398; *Hays* v. *Buzard*, 31 Mont. 74, 77 Pac. 423; *Head* v. *Hale*, 38 Mont. 302, 100 Pac. 222.) .

Regardless of their pleadings the plaintiffs and the administrator sought to claim an appropriation through ditch No. 2 as an appurtenance to survey No. 425, based upon an appropriation by Johnson. Even if the proof had been warranted by the pleadings, we cannot say the court erred in finding against this contention. The evidence bearing on the point was far from convincing. While there was some testimony indicating the use by Johnson of Trout Creek water through the

Johnson ditch for mining and other purposes in Snowshoe gulch during some of the years prior to 1915, the court did not consider it sufficient to establish an appropriation. At best the evidence is meager and obscure. Apparently he did some mining in Snowshoe gulch at different times prior to 1915, but as to what extent if at all he used the water of Trout Creek for that purpose the record does not disclose. There was water in Snowshoe gulch which he used for mining, seemingly. There is some evidence indicating that he irrigated a small tract of land in the gulch by the use of Snowshoe water. Possibly he used a small but undetermined quantity of Trout Creek water for irrigating there. There is evidence that upon a few occasions, apparently widely separated by time, he used the Trout Creek water for running a small sawmill, and upon one occasion at least he used that water for running a threshing-machine, but upon what claim or basis of right he used the water upon any of these occasions the evidence does not show.

He had conveyed away his right to the ditch. It was not shown that he ever again obtained any title thereto. On the contrary there was evidence tending to show that he did not claim any right in it. As an illustration, we find him, according to the evidence, requesting of the defendant Senecal permission to use the ditch upon one occasion.

The plaintiffs and the administrator in their attempt to show [3] an appropriation failed to show the character, extent or necessity of the use. In a word, they failed to show the requisites of an appropriation as outlined in *Toohey* v. *Campbell,* 24 Mont. 13, 60 Pac. 396; *Smith* v. *Duff,* 39 Mont. 382, 133 Am. St. Rep. 587, 102 Pac. 984; *O'Shea* v. *Doty,* 68 Mont. 316, 218 Pac. 658. The statement in *Wheat* v. *Cameron,* 64 Mont. 494, 210 Pac. 761, that "actual diversion and beneficial use existing or in contemplation constitute an appropriation," necessarily implies rightful diversion by lawful means. Mere use of water, even for a beneficial use, if made by trespass, would not constitute an appropriation. (*Prentice* v. *McKay,* 38 Mont. 114, 98 Pac. 1091.)

As above adverted to, much of the evidence upon which [4] plaintiffs and the administrator rely was controverted. Moreover, some of the evidence while not directly controverted when taken into consideration with the surrounding facts and circumstances, the court was warranted in disbelieving, if it saw fit to do so. (*Reid* v. *Hennessy Merc. Co.,* 45 Mont. 383, 123 Pac. 397; *Security State Bank* v. *McIntyre, ante,* p. 186, 228 Pac. 618.)

All of the court's findings are supported by substantial evidence. Upon the whole the evidence does not preponderate decidedly against any of them.

The record is very imperfect. In fact, if we had been inclined to be technical, we might well have refused to consider it. Nevertheless, we have examined it patiently. After its careful consideration, aided by the briefs of counsel, we are satisfied that error has not been shown.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and HONORABLE WM. H. POORMAN, District Judge, sitting in place of MR. JUSTICE COOPER, disqualified, concur.