This is an appeal from the decree given by the Circuit Court of Jackson County upon the final hearing in the adjudication of the relative rights of the various claimants to the waters of Rogue River and its tributaries. At the time the decree was entered, Dan Cameron, the appellant herein, gave notice in open court of an appeal from that part of the decree
See 27 R.C.L. 1257. *Page 239 
which determined his right to use the waters of Pleasant Creek, a tributary of Rogue River, through what is known as the "upper Wakeman" or "big ditch." The adjudication was made, and the decree entered in accordance with the procedure provided in what is known as the Water Code.
In the statement and proof of claim which Cameron filed before the State Water Board, he claimed to be the sole owner of said ditch, and to be entitled to divert from said creek through said ditch, for placer mining purposes, during the mining season of each year, seventy second-feet of water. The decree limits his right to twenty second-feet, and defined the mining season to be between November 1st of each year, and the first day of the next succeeding June. He also claimed the right to use, after June 1st, enough water to clean up any gold remaining in his sluices after suspending his mining operations for the season, and the right to run through his flumes during the dry season, sufficient water to keep the same from drying up and rotting away. The decree prevents him from using water for either of said purposes at any time after June 1st of any year.
The proof shows, and the fact is not disputed, that the ditch was dug and the appropriation made in 1860; that this was the first appropriation ever made from that stream by anyone for any purpose; that Cameron is now the owner of the rights acquired through said appropriation, and that water has been used for mining purposes through that ditch by Cameron, or by his grantors and predecessors in interest, every year since the ditch was dug. The use of water for the purpose of cleaning up and saving the gold, which has been separated from the gravel in the process of placer mining is an essential part of *Page 240 
such process, and the running of water through the flumes during the dry season, in order to preserve the life of the flumes, is also essential. For both of such purposes, the appropriation was made, and the right to use the water for those purposes, is a part of the rights acquired by such appropriation. In so far as the decree prohibits the use by Cameron of water for either of said purposes, the decree deprives him of a vested right acquired through the appropriation, and is therefore erroneous. Pleasant Creek, according to the proofs, is a placer mining stream, and the waters thereof are principally used for placer mining purposes. The water used in the cleaning up process and for the preservation of the flumes is not consumed or lost, and upon being returned to the stream, is available to the water users below. In respect to these matters, the decree will be modified, and he is given the right to use water for both of said purposes at any season of the year when necessary to accomplish those purposes,
Cameron complains of the limitation contained in the decree upon the quantity of water he is permitted to use during the mining season. The entire record is not before us, and from the part of the record which is here, there is no way by which we can determine the quantity of water which his ditch will carry, or the quantity necessary to be used in carrying on his placer mining operations, nor have we any way in which we can determine the quantity of water flowing in said stream. For that reason, we are unable from the record before us, to find any error in the decree, limiting his use to twenty second-feet of water during the season. It has always been the policy of the law, and still is, to permit any person to make any beneficial use of any surplus water flowing in any non-navigable, public stream, and if there is *Page 241 
any surplus water during the high-water season, Cameron like all other persons, may apply the surplus to any beneficial use, but not during any ordinary stage of the water, and not at a time when the water is being used by parties below for irrigation purposes, nor in a way which would deprive any person of the quantity of water adjudicated to them by said decree.
The respondent George W. Blalock has made no appearance here and has filed no brief. He also filed with the State Water Board, as did Cameron, a statement and proof of claim, in which he asserted that he was the sole owner of the ditch in controversy. It appears from the certified copies of the deeds offered in evidence that Cameron has acquired the entire ownership of the ditch and the rights of the original appropriators. Blalock's claim of ownership is based upon two facts: (1) On July 20, 1900, James Owens as executor of the estate of Annie E. Evans, deceased, executed a deed conveying to Blalock, a tract of land, which deed purported to convey, "also the right, title and interest that Jacob Evans and Annie E. Evans had in and to a certain water ditch and water right formerly owned by Chapin and Wakeman, known and commonly designated as the big ditch." One of the deeds, a certified copy of which was offered by Cameron in support of his claim of ownership, was a deed from Jacob Evans, conveying his entire interest in that ditch to one of Cameron's grantors, and there is nothing in the record to show that Evans ever subsequently acquired any interest in the ditch. There was evidence, however, tending to show that Annie E. Evans, in her lifetime, used water through that ditch to irrigate eight acres of the land conveyed by her executor to Blalock, and that since acquiring the eight acres of land, Blalock *Page 242 
has himself taken water from the ditch to irrigate that particular eight acres. (2) On October 1, 1904, Miles Wakeman owned an interest in the ditch which Cameron desired to purchase. To accomplish that purpose, he not being on friendly terms with Wakeman, employed E.D. Thompson to prepare two deeds; one from Wakeman to Blalock, and the other from Blalock to Cameron, each conveying the particular land owned by Wakeman and Wakeman's interest in the ditch. As so prepared, each deed purported to convey all of the lands which the grantor owned in Section 22 of the Township and Range in which the lands purchased by Blalock from Owens, executor, were situated. Cameron gave to Thompson $200 in gold coin to pay Wakeman as the consideration for his deed, and at the same time employed Blalock, paying him ten dollars for his services to go with Thompson and secure the Wakeman deed. Thompson paid to Wakeman the money furnished by Cameron, and Wakeman executed the deed conveying the property to Blalock.
Blalock and wife in executing the deed from themselves to Cameron, inserted in the deed a clause which reads as follows: "except 155 acres more or less in Section 22, in Township 34, South Range 4 West, purchased from the Evans Estate as shown on the records of Jackson County, Oregon. Except my right and title to the Wakeman and Chapin water right and ditch."
This deed was delivered to an agent of Cameron, who caused the same to be recorded without noticing that said reservation or exception had been inserted before its execution. The reservation was proper in so far as excepting from the operation of the deed, the lands owned by Blalock, and if Blalock *Page 243 
had any interest in that ditch, then the exception was proper as to that. But it is clear that since Cameron paid the entire consideration, and since Blalock was acting for Cameron and in a fiduciary relation he could not acquire by this transaction, any interest in the ditch conveyed by Wakeman to him, for under the circumstances stated, the interest acquired by him from Wakeman in equity belonged to Cameron and it was his duty to convey to Cameron all of the interest which he acquired from Wakeman. But however that may be, and while the record seems to show that Blalock has no right, title or interest in the ditch in question, the purpose of these proceedings was to determine the ownership of water rights, and not of the ditches through which those rights are used. For that reason, and because the record is not as complete as it should be, we do not pass upon the merits of this controversy. That matter can be adjudicated in another proceeding brought for that purpose, if the parties so desire. This, however, does not affect the right of Blalock to the appropriation awarded him for the eight acres of land, whether the use of the ditch for that purpose was permissive or otherwise. The water has been actually applied to a beneficial use on the land and the validity of the appropriation does not depend upon the ownership of the ditch.
Thus it was held in Ison v. Sturgill, 57 Or. 109
(109 P. 579, 110 P. 535), that where an appropriation for the irrigation of land was made by means of a ditch by one having only a revocable license in the ditch, the rights of the appropriator to use the water thus appropriated for the irrigation of the land, would not be terminated or defeated by the revocation of the license. *Page 244 
The decree appealed from will be modified so as to conform to what is here said; in all other respects it will be affirmed.
MODIFIED.
BURNETT, C.J., and McBRIDE and COSHOW, JJ., concur.