SCOTT, RESPONDENT, *v.* JARDINE GOLD MINING & MILLING CO., APPELLANT.

(No. 6,100.)

(Submitted June 1, 1927.  Decided June 23, 1927.)

[257 Pac. 406.]

*Water Rights — Ditches — Easements — Adverse Possession — Abandonment—Effect—Equitable Estoppel—Pleading—Record on Appeal—Incorporation of Useless Matter—Penalty.*

Water Rights—Ditches—Adverse Possession—What Claimant must Show.
1.  One claiming a ditch right over another's land by adverse user must not only be able to show an open, notorious, exclusive and hostile possession of the easement claimed but also that his possession was continued and uninterrupted for the full statutory period of ten years; if possession be broken it ceases to be effectual, since, as soon as a break occurs, the law restores the constructive possession of. the owner.

———

1.  See 1 R. C. L. 716, 717.

Same—Adverse Possession—Effect of Abandonment Prior to Expiration of Ten Years.

2. Where an adverse occupant of land abandons possession before the statutory period has run, he loses all rights acquired by his adverse holding, and will be regarded as having abandoned the possession when he ceases to exercise control over the land, irrespective of his intention to return, and where he re-enters after a number of years of abandonment, he thereby merely sets in motion a new period of occupancy and the statute begins to run only from the date of re-entry.

Same—Adverse Possession—Title Limited to Portion Actually Occupied.

3. One may obtain title by adverse possession of that only which he has occupied for the statutory period; hence occupancy of one portion of a ditch does not avail him in his claim to another portion thereof not occupied by him.

Same—Right cannot be Acquired on Another's Land Without Acquisition of Easement.

4. The law does not permit the acquisition of a water right on the land of another without acquiring an easement in the land, and where an easement is not acquired, filing a declaration of a water right through a ditch of the owner of the land is a nullity.

Equitable Estoppel—Nature of Doctrine.

5. Constructive fraud underlies every equitable estoppel, i. e., the person estopped is considered as having by his admission, declaration or conduct, misled another to his prejudice, so that it would work a fraud to allow the true state of affairs to be proved; it cannot be asserted unless the party asserting it has relied upon and was misled to his prejudice by the acts of his opponent.

Same—By Silence—Necessary Elements.

6. For mere silence to work an equitable estoppel, the person to be estopped must have had an intent to mislead or entertained a willingness that another should be deceived, and the latter must have been misled to his prejudice.

Same—By Permitting One to Make Expenditures on Land Under Supposed Right—Who may not Invoke Principle.

7. The principle that one should be estopped from asserting a right to property upon which he has by his conduct misled another, who supposed himself to be the owner, into making expenditures thereon, cannot be invoked by one who, at the time he made improvements thereon, was aware of the true character of his own title, had the means of knowing it or knew that he had none.

Same—Must be Pleaded With Particularity of Facts.

8. One intending to rely upon equitable estoppel must plead it, setting forth the facts constituting it with particularity and precision, leaving nothing to intendment.

Appeal—Record—Bill of Exceptions—Incorporation of Useless Matter—Penalty.

9. Where, in violation of Rule XVII of the Rules of the Supreme Court, much useless matter, such as jokes of counsel, idle talk with witnesses, etc., is incorporated in a bill of exceptions, the offending

---

5. See 10 R. C. L. 691.
7. See 10 R. C. L. 694.

appellant, though successful, may be penalized by nonallowance of a portion of the cost of preparing the transcript.

[1]. Easements, 19 C. J., sec. 33, p. 879, n. 53, 54; sec. 36, p. 881, n. 76; sec. 37, p. 882, n. 88; sec. 49, p. 885, n. 56; sec. 59, p. 891, n. 21; sec. 197, p. 964, n. 34.  Waters, 40 Cyc., p. 696, n. 40, 42, 43, p. 697, n. 48, 52, p. 734, n. 32.
[2]  Adverse Possession, 2 C. J., sec. 130, p. 99, n. 94; sec. 131, p. 100, n. 1; sec. 189, p. 115, n. 5.
[3]  Adverse Possession, 2 C. J., sec. 64, p. 80, n. 8; sec. 497, p. 230, n. 99.  Waters, 40 Cyc., p. 700, n. 77, 78.
[4]  Waters, 40 Cyc., p. 700, n. 79 New, p. 755, n. 22 New.
[5, 6]  Estoppel, 21 C. J., sec. 116, p. 1114, n. 53; sec. 120, p. 1117, n. 91; sec. 124, p. 1120, n. 19; sec. 130, p. 1126, n. 51; sec. 136, p. 1135, n. 83; sec. 154, p. 1150, n. 90, p. 1151, n. 92.

*Appeal from District Court, Park County, in the Sixth Judicial District; B. B. Law, Judge of the Ninth District, Presiding.*

Action by Charles B. Scott against the Jardine Gold Mining & Milling Company.  Judgment for plaintiff, and defendant appeals.  Reversed and remanded, with directions.

*Mr. J. E. Healy* and *Messrs. Gibson & Smith,* for Appellant, submitted a brief; *Mr. Healy* and *Mr. Fred L. Gibson* argued the cause orally.

*Messrs. O'Connor & Miller* and *Mr. Miles J. O'Connor,* for Respondent, submitted a brief; *Mr. James F. O'Connor* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is a controversy between the plaintiff and defendant respecting a ditch which diverts water from Bear Creek, a tributary of the Yellowstone River, in Park county.  The action was begun in 1920.  In his amended complaint the plaintiff, after alleging his ownershp of lands requiring irrigation, and the use of water thereon for a period of twenty-six years, and the assertion that the only waters available for use on the lands are the waters of Bear Creek, averred that

during the year 1896, or thereabouts, his predecessors in interest entered into an agreement with the predecessors in interest of defendant to the effect that plaintiff's predecessors should assist "in the reconstruction and maintenance of a ditch that had been partly constructed by the defendant's predecessor in interest for placer mining and other purposes, which said ditch diverted the waters of Bear Creek where the present headgate is situated," and that after performing the required work and assisting in the maintenance of the ditch plaintiff's predecessors should have the right to extend it to the lands of plaintiff and to conduct through it from Bear Creek sufficient water for the irrigation of plaintiff's lands; that the "plaintiff's predecessors in interest and the plaintiff have at all times since said time done work upon said ditch in keeping it clean at and in connection with the maintenance of the same, all of which has been done with the knowledge and consent of the defendant and its predecessors in interest, except as hereinafter set forth." That both parties fully executed the contract by the construction of the ditch and its enlargement and repair. That about the 15th of June, 1896, the plaintiff's predecessors in interest appropriated 300 inches of the waters of Bear Creek and conducted the same by means of the ditch to plaintiff's lands where the water ever since has been used for irrigation by "plaintiff and his predecessors in interest, uninterruptedly, adversely and continuously down to the end of the year 1919." That the defendant and its predecessors in interest "until the year 1920, always recognized by their acts and otherwise the rights of the plaintiff and his predecessors in interest to the free and unmolested use" of the ditch and the waters of Bear Creek. That during the year 1920 the defendant wrongfully asserted title to the whole of the ditch, and the headgate by which plaintiff diverted water therefrom, and threatened to prevent his further use of the ditch. Other allegations need not be stated.

The sufficiency of the complaint is challenged along several lines, and it is urged that the plaintiff confused two theories therein—that his right is based on contract, and that it is based on adverse user—but it is not necessary to give consideration to this matter now, as will presently appear.

The defendant answered the complaint and counterclaimed. It denied that plaintiff had any interest in the ditch and claimed exclusive ownership thereof. In the counterclaim it averred its ownership of a group of mines, mills and reduction works, together with a hydroelectric power and transmission plant, located on Bear Gulch, and its ownership at all times of the land upon which the ditch heads. These allegations the plaintiff admitted in his reply.

At the close of the oral testimony counsel for plaintiff gave notice that he would ask leave to amend the complaint to conform to the proof but desired to withhold the application to amend until all the documentary proof should be admitted. This was agreed to. Long after all the evidence had been admitted counsel submitted their amendment, which was, in substance, that the defendant and its predecessors in interest, at all times mentioned in the complaint, had knowledge that the plaintiff and his predecessors in interest were using the water and did not at any time or at all interfere, or interrupt the use of the water until 1919, but "stood by and observed the plaintiff and his predecessors in interest developing their lands, repairing said ditches and in all incurring large expenditures of money without objection or manifestation of interest or title on their part." That "the plaintiff and his predecessors in interest used the said ditches, openly, adversely, continuously, uninterruptedly from the year 1896, down to 1919." The court permitted the amendment, and thereafter sustained plaintiff's claim to an interest in the ditch sufficient to convey 145 inches of the waters of Bear Creek therefrom to his lands, and found that he had appropriated that amount of water upon June 15, 1896. It found specifically that "the plaintiff has acquired and now owns an easement to convey

145 inches of water from Bear Gulch Creek through a certain ditch hereinabove designated as 'Bear Gulch Ditch' and 'Bear Gulch Placer Ditch' which traverses portions of said mineral entry No. 44.'' It found the defendant entitled to 900 inches of the waters of Bear Creek appropriated in 1882 and to the ditch, except as to plaintiff's right therein. From the decree entered pursuant to the court's findings of fact and conclusions of law the defendant has appealed.

Counsel for defendant urge that the court committed error in permitting the amendment to the complaint. In view of the result which must be reached this point need not be considered.

The plaintiff failed to establish any right in the ditch by contract; on this feature of the case there was an utter failure of proof. In this situation he sought to save himself by proving that he had acquired title by adverse use. Whether the pleadings warranted the reception of evidence upon this theory we need not determine. We shall decide the case upon the evidence admitted.

The ditch which is the main subject of this lawsuit was constructed originally in 1876, or thereabouts. It tapped, and taps, the right bank of Bear Creek in the southeast quarter of section 8 in township 9, south of range 9 east of the Montana principal meridian on a placer mining claim which is designated Resurvey No. 44, called by the court Mineral Entry No. 44, and ran a distance of three or four miles to what is known as Spotted Bar, Survey No. 43, where, by means of the water supplied by the ditch, hydraulic mining was carried on during the latter 70's and until 1888. The ditch was enlarged in the early 80's. The Bear Gulch Placer Mining Company, predecessor in interest of the defendant, mined extensively.

From 1887 until 1896 no use was made of the ditch by anyone. In 1896 it was badly in need of repair and like the mining camp which brought it into existence appeared to be abandoned. In June, 1896, the plaintiff being in need of water to irrigate his lands, entered upon the ditch and at considerable

expense put it in condition to carry water. The ditch was repaired by plaintiff from its head to the point where plaintiff takes water from it by a diverting ditch, a distance of approximately a mile and a half. Plaintiff continued to divert and use water through this ditch from 1896 until 1903, and made the necessary repairs during that period. In the meantime the Bear Gulch Placer Mining Company leased the ditch to Place and Amsden for the years 1897, 1898, 1899 and 1900, and to John Spiker in 1902, his lease to run until 1905. These lessees and the plaintiff ran water through the ditch as they saw fit. There was no friction between them.

In 1903 the Bear Gulch Placer Mining Company leased its ditch and water right, for power and other purposes, to The Kimberly-Montana Gold Mining Company, the lease to run until December, 1910. After obtaining the lease the Kimberly-Montana Company enlarged and repaired the ditch and by means of an extension thereof conducted the waters of Bear Creek to a hydroelectric plant which it constructed. Finding that the tailings from the old workings in the gulch entered the Bear Gulch ditch, and desiring clear water for use in operating its plant, the Kimberly-Montana Company constructed a new ditch, 5,720 feet in length, from a point on the Uncle Joe Placer, Survey No. 5819, near the town of Jardine, to a point on the Bear Gulch ditch seventy-four rods from its head. The new ditch, called the Kimberly-Montana ditch, diverted from the left bank of Bear Creek and about half way of its course crossed Bear Creek by means of a flume from the left to the right bank of the creek and ran thence to its junction with the Bear Gulch ditch. After the construction of the Kimberly Montana ditch the plaintiff ceased to use the upper seventy-four rods of the Bear Gulf ditch; he received at his headgate water supplied by the Kimberly-Montana ditch. The Bear Gulch ditch from its head to the junction with the Kimberly-Montana ditch was not used from 1903 until 1916. The Kimberly-Montana Company operated from 1903 until 1907 or 1908, when it ceased its operations which were never resumed. While

492    Scott *v.* Jardine Gold Min. & Mill. Co.    [June T. '27

[79 Mont. 485.]

operating it made all necessary repairs upon the Bear Creek ditch. After the Kimberly-Montana Company ceased operating the plaintiff diverted the waters which he needed through the Kimberly-Montana ditch and the Bear Gulch ditch to the headgate of his own ditch until 1916. During that period he kept the Kimberly-Montana and Bear Gulch ditches (except the seventy-four rods aforesaid) in a state of repair sufficient for his purposes. It seems that between the irrigating seasons of 1915 and 1916 the Kimberly-Montana flume across Bear Creek fell down. The plaintiff preferred to repair, or, if necessary, to rebuild, the Bear Gulch ditch from its junction with the Kimberly-Montana ditch to the creek rather than to repair the Kimberly-Montana flume. He therefore entered upon the seventy-four rods of ditch intervening between the junction point of the Bear Gulch and Kimberly-Montana ditches, and Bear Creek, and thoroughly repaired or rebuilt the same, after which he diverted the waters of Bear Creek which he needed through the Bear Gulch ditch without further reference to the Kimberly-Montana ditch. In 1917 the Bear Gulch Placer Mining Company sold the Bear Gulch ditch and its water right to the defendant. Beginning with 1917 the defendant renovated the ditch and since has kept it in repair.

In 1920 the plaintiff notified the defendant of his claim to an interest in the ditch and as a result of that notification the defendant nailed up the plaintiff's headgate. This lawsuit [1] resulted. The facts which determine the controversy are these: The Bear Gulch ditch diverts from Bear Creek upon patented ground, Resurvey No. 44, which at all of the times herein mentioned was the property of defendant and its predecessors in interest, and runs and always ran across that placer claim for a distance of 600 feet. The plaintiff had possession of this portion of the ditch for seven years only, from 1896 to 1903. Beginning with 1903 he ceased to use this portion of the ditch and did not use it for thirteen years, during which time he took his water through the Kimberly-Montana ditch, in which he never had and does not now claim any interest.

He did not resume the use of the seventy-four rods at the head of the Bear Creek ditch, which includes the 600 feet within the boundaries of Resurvey No. 44, until 1916. It is clear that plaintiff did not obtain an easement upon defendant's land for any purpose merely by using the ditch which crosses the same for seven years,—three years short of the period prescribed by the statute. (Sec. 6818, Rev. Codes 1921.) The law is that in addition to the necessity of having an open, notorious, exclusive and hostile possession, of the easement claimed, it is also essential that the disseizor, in order that it may ripen into title, should be shown to be continuous and uninterrupted for the full statutory period. The moment the possession is broken it ceases to be effectual because, as soon and as often as a break occurs the law restores the constructive possession of the owner. (1 R. C. L. 716, 717, and numerous authorities cited.) The reason is that if there be any period during the ten years in which the owner could not find an occupant in possession whom he could rightfully sue as a trespasser, that period cannot be counted against him as a part of the ten years, "for it would be absurd to suppose that a bar was progressing against him at a moment when the° law afforded him no action." (*Trotter* v. *Cassady*, 3 A. K. Marsh. (Ky.) 365, 13 Am. Dec. 183; *Wilson* v. *Braden*, 56 W. Va. 372, 107 Am. St. Rep. 927, 49 S. E. 409.)

Where an adverse occupant abandons possession before the [2] statutory period has run, he loses all the rights acquired by his adverse holding and by such abandonment the rightful owner is placed in the same position in all respects as he was before the intrusion took place. (2 C. J. 99.) If the adverse claimant in fact had ceased to exercise control over the land, he will be regarded as having abandoned the possession, although he does not intend to do so, and it is therefore immaterial in such a case that the claimant may have intended to return. (2 C. J. 100.)

When the plaintiff abandoned the use of the seventy-four rods at the head of the Bear Gulch ditch, his failure to use

it for a period of thirteen years, under the circumstances, must be held to have been an abandonment thereof. This break in his occupancy is fatal to his case. When he re-entered upon the seventy-four rods in 1916 he merely set in motion a new period of occupancy—his entry was a new disseizin—and the statute began to run only from the date of the re-entry. (*Downing* v. *Mayes*, 153 Ill. 332, 46 Am. St. Rep. 896, 38 N. E. 620.) Of course, his occupancy of one portion of the [3] ditch does not avail him in his claim to another portion not occupied by him. In any case one may obtain title by adverse possession of that only which he has occupied during the full statutory period. The assertion that the plaintiff never at any time had an easement for a ditch across the defendant's placer claim, Resurvey No. 44, is irrefutable. He never had the right, therefore, to divert any water from Bear Creek through that portion of the ditch which crosses defendant's placer claim. At all times he was a naked trespasser upon the defendant's ground and in the ditch crossing that ground. And here we suggest that whether, if plaintiff's possession had been shown to be continuous, we could affirm the trial court's finding of adverse possession, is doubtful in view of plaintiff's testimony that he used the ditch with the consent and never against the will of defendant and its predecessor in interest; further on this feature of the case we need not go. By reason of the fact that he has no easement through the Bear Gulch ditch across the defendant's placer claim he has no right upon which he can maintain this action.

Nor has he any water right. When he diverted water [4] through the Bear Gulch ditch from Bear Creek in June, 1896, he was a trespasser upon the defendant's lands, and he continued so to be. In 1903 he filed a declaration of water right in which he claimed that he had appropriated 300 inches of water through the Bear Gulch ditch on June 15, 1896. At the time he filed his declaration he was receiving water through the Kimberly-Montana ditch. His declaration of water right was a nullity. It is settled law that one may not acquire a

water right on the land of another without acquiring an easement in the land.    (*Prentice* v. *McKay*, 38 Mont. 114, 98 Pac. 1081; *Smith* v. *Denniff*, 24 Mont. 20, 81 Am. St. Rep. 408, 50 L. R. A. 741, 60 Pac. 398; *Warren* v. *Senecal*, 71 Mont. 210, 228 Pac. 71; *Alta Land Co.* v. *Hancock*, 85 Cal. 219, 20 Am. St. Rep. 217, 24 Pac. 645.)

Plaintiff places some reliance upon an agreement entered into between the Kimberly-Montana Gold Mining Company and the plaintiff and another respecting the use of the Bear Gulch ditch, wherein it is claimed that company recognized plaintiff's rights.    However that may be, it is enough to say the agreement did not bind defendant's predecessor in interest, nor does it affect defendant.

Upon the presentation of the case here it is sought to sustain plaintiff's case by invoking the doctrine of equitable estoppel.    The trial court did not rest its decision upon that theory, nor could it have done so in view of the evidence. Its decision is based upon plaintiff's adverse use of defendant's ditch.    As was said in *Moore* v. *Sherman*, 52 Mont. 542, 159 Pac. 966, constructive fraud underlies every equitable estoppel. "That is, the person estopped is considered as having by his admission, declaration, or conduct, misled another to his prejudice, so that it would work a fraud to allow the true state of facts to be proved." (10 R. C. L. 691.)    Before anyone can invoke the doctrine he must show he was misled to his prejudice by the conduct of which he complains.    (*Yellowstone County* v. *First Trust & Savings Bank*, 46 Mont. 439, 128 Pac. 596; *Rate* v. *American Smelting & Refining Co.*, 56 Mont. 277, 184 Pac. 478; *Waddell* v. *School District No. 2*, 74 Mont. 91, 238 Pac. 884.)    "The doctrine of estoppel cannot be resorted to unless the party asserting it relied upon and was misled to his prejudice by the acts of his opponent."    (*In re McGovern's Estate*, 77 Mont. 182, 250 Pac. 812.)    Mere silence cannot work an estoppel.    To be effective for this purpose the person to be estopped must have had an intent to mislead or a willingness that another should be deceived and the other must have

been misled by the silence.   (10 R. C. L. 693; *Moore* v. *Sherman*, supra.)   An estoppel *in pais* never takes place where one party did not intend to mislead and the other is not actually misled.

Plaintiff attempts to invoke the principle that one should [7] be estopped from asserting a right to property, upon which he has by his conduct misled another, who supposed himself to be the owner, to make expenditures.   But this salutary principle cannot be invoked by one who, at the time the improvements were made, was acquainted with the true character of his own title, or with the fact that he had none.   (*Steel* v. *Smelting Co.*, 106 U. S. 447, 27 L. Ed. 226, 1 Sup. Ct. Rep. 389 [see, also, Rose's U. S. Notes].)

Where the foundation for a claimed estoppel is silence or omission to give notice of one's rights the party relying thereon must not have had the means of knowing the true state of facts.   (10 R. C. L. 694.)   Here the plaintiff knew the facts at all times.   When first he entered upon the ditch he knew it was the property of the Bear Gulch Mining Company.   He repaired it and ran water through it with that knowledge.   In his amended complaint he alleged that the inception of his use was pursuant to a contract with one Phelps who was the agent of a predecessor in interest of the defendant.   Phelps was not such agent, and plaintiff was not led to believe he was by any act, admission or declaration of any agent of the defendant, or its predecessors in interest.   There is not a word in the evidence indicating that any agent of the defendant, or its predecessor in interest, made any admission or declaration respecting the ditch which influenced the plaintiff's conduct.   Nor does the record disclose any conduct on part of defendant or its predecessors in interest, unless mere silence, that misled the plaintiff in any way.   And silence alone is not enough.

There is no evidence from which it may be inferred that the defendant, or any person connected with the defendant, intended to mislead the plaintiff or exhibited a willingness that

he should be deceived. Nor is there any evidence in the record which tends to show that any agent of the defendant whose knowledge could bind the defendant, knew prior to 1906 that the plaintiff claimed any interest in the ditch, and that was three years after the plaintiff had ceased to use that portion of the ditch which crosses the defendant's patented ground. Moreover, the plaintiff did not testify that he was misled in any way by the defendant or its predecessor in interest. He iterated and reiterated that he thought he had an interest in the ditch because of his long continued use of it.

If the plaintiff intended to rely upon estoppel it was in-
[8] cumbent upon him to plead it. (*Stafford* v. *Hornbuckle,* 3 Mont. 485.) This he did not do. The defendant was not warned that it would have to meet that issue. If plaintiff intended to plead estoppel in the amendment which was allowed to the complaint, he failed of his purpose, for the pleading is insufficient. In pleading an estoppel *in pais* the facts should be set forth with particularity and precision, leaving nothing to intendment; the pleading should allege facts showing the existence of all the essential elements of the estoppel. (10 R. C. L. 844.) This the plaintiff failed to do. Upon the facts he could not have done so.

This case is widely different from *Hays* v. *De Atley,* 65 Mont. 558, 212 Pac. 296; *Glantz* v. *Gable,* 66 Mont. 134, 212 Pac. 858, and *Stetson* v. *Youngquist,* 76 Mont. 600, 248 Pac. 196. As the plaintiff has no right to run water in the defendant's ditch nor any appropriation of water from Bear Creek, the court erred in its decree. The law is against the plaintiff and he cannot prevail.

The record in this case is voluminous. The transcript, in
[9] three volumes, embraces 910 pages, and the exhibits embrace many more. The transcript contains much useless matter. The stenographer seems to have caught every word said. So we find in the record discussions about taking recesses, numerous jokes of counsel and idle talk with witnesses—"visiting," the court called it in reproving counsel. A page and a half

of the transcript is taken up with an investigation as to how a witness came by the title of ''Major.'' None of this useless matter should have been permitted in the bill of exceptions. We recommend that trial judges refuse to certify bills of exception containing matter which clearly has nothing to do with the merits of the case. For this transgression of Supreme Court Rule XVII we shall impose a penalty upon the defendant.

The cause is remanded to the district court of Park county with directions to award to the defendant 900 inches of the waters of Bear Creek, appropriated in 1882, with the right to convey the same through the Bear Gulch ditch without restriction as to the use thereof, and to enter its judgment declaring that the plaintiff has not the right to divert from Bear Creek or to make use of any of the waters thereof through the Bear Gulch ditch.

For its transgression of Rule XVII the defendant shall pay one-third the cost of the transcript. Otherwise the defendant shall be entitled to its costs upon this appeal.

*Remanded, with directions.*

Associate Justices Myers, Matthews and Galen and Honorable Theodore Lentz, District Judge, sitting in place of Mr. Justice Stark, disqualified, concur.

Rehearing denied July 7, 1927.