CONNOLLY, Appellant, *v.* HARREL et al., Respondents.

(No. 7,524.)

(Submitted April 25, 1936.   Decided May 7, 1936.)

[57 Pac. (2d) 781.]

*Mr. W. J. Burke* and *Mr. Elmer E. Hershey,* for Appellants, submitted a brief and argued the cause orally.

*Mr. Lloyd I. Wallace* and *Mr. R. H. Wiedman,* for Respondents, submitted a brief; *Mr. Wiedman* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action against the defendants to have adjudicated, as between the parties, the waters of ''Skidoo'' or ''Hell Roaring'' Creek, in Lake county. The court entered a decree awarding the defendant Rosenberger and the defendant H. E. Harrel each an appropriation of 40 inches, or approximately 1 cubic foot per second of time, of the waters of this creek, and adjudged that these appropriations were prior in point of time to any appropriation of the plaintiff from the same stream. The appeal is from the judgment.

Defendant H. E. Harrel initiated and completed an appropriation from another creek, referred to in the record as ''unnamed,'' and also as ''unknown'' creek, in 1928 by means of a diversion and ditch leading to the same lands on which he later applied the waters of Skidoo Creek. These facts are important only in that a substantial part of the ditch constructed for this diversion was utilized by the parties in the making of their several later appropriations from Skidoo Creek.

The defendant H. E. Harrel posted a notice of appropriation at his intended point of diversion on or about the 10th day of June, 1929, which was within a few days thereafter recorded. The defendant Rosenberger posted his notice of appropriation on about the 24th day of June, 1929, at his intended point of diversion, which was likewise within a few

days recorded. Both of these posted notices were at the same point. The point of diversion of both defendants was on the lands belonging to one Jensen, who had a ditch leading from the point of diversion across his premises and which connected with a part of the ditch constructed by Harrel the previous year. Jensen consented to these parties using his ditch, which they cleaned and proceeded to use for the diversion of water from Skidoo Creek and apply it on their respective lands. The consent on the part of Jensen was verbal, and he testified that it was to be a temporary arrangement, with no limitation as to the period of time the defendants might continue to use his ditch. Later, in the summer of 1929, the defendants, together with the plaintiff, proposed to enlarge and did enlarge the Jensen ditch for the purpose of diverting water from Skidoo Creek for the irrigation of their several lands. This enlargement of the Jensen ditch was apparently made without the knowledge of its owner. After Jensen became aware of the enlargement, he withdrew his consent to the use of the ditch across his land by any of these parties. The record is not clear as to when this occurred, but presumably between August 15th and the 21st.

The parties to this action on August 15, 1929, entered into a written agreement, reciting that all of the parties to it had filed a water right on this creek, and that it was agreed that each of them would pay one-third of the cost of construction expended for the building of the Harrel ditch, and one-third of the cost of enlarging the ditch to carry the necessary water, so that each of the parties would have a one-third interest in the ditch and each was to pay one-third of its upkeep. They expressed their intention in this agreement that each would own, as tenants in common, a one-third interest in the ditch, each to pay one-third of the cost of operation and maintenance.

On August 21, 1929, the parties to the ditch agreement secured by an instrument in writing a right of way for a ditch across the lands of one Lindsay to convey waters from Skidoo Creek. A ditch was constructed over this right of way con-

necting with the Harrel ditch, thereby avoiding the use of the Jensen ditch in diverting water from the creek. The parties to the action at a convenient point on the Harrel ditch installed a box to divide the waters of the creek, and in seasons of the year when there was insufficient water for the needs of all, the defendants closed the part of the box through which plaintiff's portion of the water passes, and have proceeded to take the entire flow of the stream for their own purposes. The record does not indicate the date of an appropriation on behalf of the plaintiff, aside from the allegation of his complaint which is to the effect that it was as of the date of July, 1929, and this is admitted by the answer.

Plaintiff has made numerous specifications of error which have not been argued separately. His contention is that the appropriations of defendants were of no validity whatever until the parties to the action secured the right of way from Lindsay and constructed the new ditch, and that therefore all three appropriations are of equal priority. His argument proceeds upon the theory that one may not go upon the land of another and make a valid appropriation by diverting water and applying it to a beneficial use, unless such appropriator has a valid easement permitting him to carry the water across such land. This argument is founded upon certain expressions found in various decisions of this court which, if applied literally, strongly support, if not sustain, the contention of plaintiff.

In the case of *Scott* v. *Jardine Gold Mining & Milling Co.*, 79 Mont. 485, 257 Pac. 406, 410, it was said: "It is settled law that one may not acquire a water right on the land of another without acquiring an easement in the land." The following cases are cited as supporting the statement: *Prentice* v. *McKay*, 38 Mont. 114, 98 Pac. 1081, *Smith* v. *Denniff*, 24 Mont. 20, 60 Pac. 398, 81 Am. St. Rep. 408, 50 L. R. A. 737, 741, and *Warren* v. *Senecal*, 71 Mont. 210, 228 Pac. 71. Similar expressions as the one quoted are found in the cited cases. In the cases of *Scott* v. *Jardine Gold Mining & Milling Co.*,

supra, and *Warren* v. *Senecal*, supra, the person asserting a water right had, as the court observed in each instance, initiated his claim in trespass, and had continued to assert the claim as a trespasser. The case of *Prentice* v. *McKay*, supra, likewise involved the assertion of a water right which could only be exercised by trespassing upon the lands of another; however, in that case the right was not initiated in trespass, but the appropriator was a mere licensee whose license had been revoked. The case of *Smith* v. *Denniff*, supra, involved the question as to whether a water right was appurtenant to a certain parcel of land. The court, as preliminary to the determination of the question, observed that it was necessary to investigate the nature of a water right, how title to the same may be acquired, the character of its ownership, and its relation to other real property. In the course of the discussion on the general subject of the nature of water rights, a statement similar to that quoted, supra, was there made. The facts in that case involved no question akin to that now before the court. In each of the other three cases the person claiming the water right was attempting to assert the right, as against the owner of the land on which he had committed trespass, either in an attempt to initiate the right or to continue the exercise thereof.

In *Prentice* v. *McKay*, supra, while it is true the right was initiated as a license, after the license was revoked, the opinion does not reveal that there was any attempt to exercise the right in some manner which would not amount to a trespass, and in fact it does not appear from the opinion that it could have been exercised in any manner without committing trespass. The water there attempted to be appropriated was the water from certain springs on the land of another, and it is altogether possible that, owing to the topography of the country, the claimant in all probability might not have been able to exercise the right to the waters of the springs without being guilty of trespass.

We have many times said that general expressions used in the court's opinions are to be taken in connection with the case under consideration. (*Lindblom* v. *Employers' Liability Assur. Corp.*, 88 Mont. 488, 295 Pac. 1007; *Williams* v. *Anaconda Copper Min. Co.*, 96 Mont. 204, 29 Pac. (2d) 649.)

When the defendants went upon the lands of Jensen, posted ▮ their notice of appropriation, diverted the water through his ditch, and applied it to a beneficial use on their own lands, they were licensees, but their license might be revoked by Jensen at any time. (*Great Falls Waterworks Co.* v. *Great Northern Ry. Co.*, 21 Mont. 487, 54 Pac. 963.) The early English cases say of a license that it "passeth no interest nor lease, nor transfers property in anything but only makes an action lawful which without it had been unlawful as a license; * * * to hunt in a man's park, to come into his house are only actions which without license had been unlawful." (*Thomas* v. *Sorrel*, Vaughan, 351; 2 Tiffany on Real Property, 2d ed., 1202.) The statement that a license "passeth no interest" has been severely criticized as being inaccurate. (2 Tiffany on Real Property, supra; 27 Yale Law Journal, 95.) Clearly, the defendants in their course of conduct on the Jensen land were not trespassers, and while this court in the decisions cited, supra, employed language which, if taken literally, was broad enough to include the defendants in this case, it in each instance was applying it as against one who was a trespasser.

We have held repeatedly that water rights and ditch rights ▮ are separate and distinct property rights. One may own a water right without a ditch right, or a ditch right without a water right. (*Maclay* v. *Missoula Irr. Dist.*, 90 Mont. 344, 3 Pac. (2d) 286; *McDonnell* v. *Huffine*, 44 Mont. 411, 120 Pac. 792.) Likewise we have held that a settler upon public lands of the United States may convey his right thereon orally to one who thereupon assumes immediate possession. (*Geary* v. *Harper*, 92 Mont. 242, 12 Pac. (2d) 276.) It is elsewhere held that the revocation of a license to build a ditch does not

necessarily affect the rights to the water carried by the ditch. (*Ison* v. *Sturgill*, 57 Or. 109, 109 Pac. 579, 110 Pac. 535; *In re Rogue River Adjudication*, 120 Or. 237, 251 Pac. 898; 1 Wiel on Water Rights, 3d ed., 483; 2 Kinney on Irrigation, 2d ed., 1737.)

We conclude that the attempted appropriations of the defendants made under a license from Jensen to use his ditch and point of diversion were valid appropriations. The general expressions found in the previous decisions of this court mentioned, supra, are hereby limited to cases of trespass. The trial court correctly decided that the appropriations of the defendants were prior in point of time to that of plaintiff.

Judgment affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, MATTHEWS and MORRIS concur.

Rehearing denied May 21, 1936.