MARKS v. HILGER.

(Circuit Court of Appeals, Ninth Circuit.   January 5, 1920.)

No. 3372.

1. WATERS AND WATER COURSES ⬤⟿142—APPROPRIATION GIVES APPROPRIA-
   TOR TITLE TO USE WATERS.
      The state of Montana has assumed to itself ownership of rivers and
   streams in the state, and has granted the right to appropriate waters in
   accordance with statute, which appropriation vests in the appropriator,
   with full title to the use of such waters.

2. WATERS AND WATER COURSES ⬤⟿143—APPROPRIATOR ENTITLED TO SEEPAGE
   WATER.
      It is established in Montana that the prior appropriator of water is en-
   titled to the use of all water in the stream to satisfy his appropriation,
   whether such waters come from seepage or from water naturally flowing.

3. WATERS AND WATER COURSES ⬤⟿143, 152(3)—NO EXCUSE TO APPROPRIATOR
   TAKING EXCESSIVE QUANTITY THAT EXCESS WAS RETURNED TO STREAM BY
   SEEPAGE.
      An appropriator of water, who took a greater quantity than he was al-
   lowed to take under decree fixing priorities, cannot justify his taking on
   the ground that the water was taken in the flood season, and was re-
   turned to the stream by seepage, and was really a benefit to subsequent
   appropriators, but such appropriator is guilty of contempt.

In Error to the District Court of the United States for the District
of Montana; George M. Bourquin, Judge.

Suit by the Ames Realty Company against the Big Indian Mining
Company and others, in which water rights were fixed.  On petition
of Peter Hilger, I. W. Marks was adjudged in contempt, and con-
temnor brings error.  Affirmed.

C. A. Spaulding, of Helena, Mont., for plaintiff in error.
C. W. McConnell, of Helena, Mont., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge.  This is a contempt proceeding, arising in the
following manner:  In 1911 the District Court made a decree in the
case of Ames Realty Company, Complainant, v. Big Indian Mining
Company et al., Defendants, decreeing certain rights in the waters of
Prickly Pear creek and its various tributaries.  I. W. Marks and Peter
Hilger, and many others, were landowners and parties defendant in
that action.  Marks was decreed a right of user of 21 inches of water
from Prickly Pear creek of date April 1, 1865, also a right to 8 inches
of date April 1, 1893, and to 7 inches of date April 1, 1894, out of
Dutchman creek, a tributary to Prickly Pear.  Hilger was awarded a
right to the use of 67 inches from Prickly Pear of date April 4, 1866,
and of 100 inches of date November 24, 1866.  The decree also en-
joined each of the parties from in any wise interfering with any of
the water rights of any and all other parties as fixed and decreed.  In
July, 1918, Hilger by affidavit alleged that Marks had violated the de-
cree by using more water from Dutchman creek than the decree had
awarded to him, and that he had failed to comply with the provisions

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the decree requiring each owner to construct proper measuring boxes in his ditches conveying water from Prickly Pear and Dutchman creeks. The lands of Hilger and some others were along Prickly Pear creek, some miles below the point where Dutchman creek flows into Prickly Pear. Some of these lands were irrigated with Prickly Pear creek water under water rights adjudged to be prior to Marks' rights by the decree hereinbefore referred to. Marks appeared, testimony was heard, and Marks was found guilty of contempt and fined $1. He brought writ of error.

The substantial facts as found by the District Court are these: The boxes used by Marks were out of order in July, 1918, and were practically useless for accurately measuring the flow of the water; but the evidence shows that Marks was diverting 50 inches of water from Dutchman creek through four ditches upon his land, and that but for such diversion the water would have flowed down to the use of the Ames Realty Company and others. Marks owned a strip of about 50 acres through which Dutchman creek ran for about a mile and a half. He turned the water from Dutchman creek into four ditches that would carry 200 inches or more of water, and irrigated the 50 acres in grass and grain crops until the water became less in flow, when he began to turn it off. Marks so used the water that sometimes by seepage there was more water in Dutchman creek at the point of departure from his land than at its entrance, but there was no storage of the seepage water. The seepage or waste was nothing "out of the usual" which was returned to the stream, although some indefinite part of the seepage in July may have been from irrigation carried on by Marks in May or June. It was found that the measurements by Marks were very indefinite, and that under the method of his use the saturation of the land permitted large quantities of water to go to waste, and that such method was not proper, and did not constitute the creation of a reservoir. It was further found that the water which Marks "borrowed" was a part of the natural flow of Dutchman creek, and that such natural flow was not limited to the water that was in the creek at the entrance to Marks' land, but is that quantity which ought to be in the creek at its departure from Marks' land, namely, the flow at the entrance plus the seepage from Marks' land.

[1-3] The position of Marks is that in the beginning of the season, when there is an abundance of water, he turns such quantities upon his lands that they become saturated, and that at a later time in the season the waters upon these lands, by reason of seepage, flow back into Dutchman creek and serve to increase the flow in Dutchman, and to create a flow even greater in amount than the usual flow of water in Dutchman creek above the lands of Marks, and that because of this seepage flowing from his lands he has a right to take as much water from Dutchman creek as the capacity of his ditches will allow, even though the original decree of the court limited him to 15 inches of waters of Dutchman creek.

We cannot uphold the argument. In Kansas v. Colorado, 206 U. S. 46, 27 Sup. Ct. 655, 51 L. Ed. 956, it was claimed in behalf of the state of Colorado that there was a right to the use of the waters of

the Arkansas river over Kansas, because the use of the waters of the Arkansas river in irrigating within Colorado stored the waters, and caused more water to flow out by seepage below than was actually used upon the lands in Kansas. The court, through Justice Brewer, commented upon the difficulty of obtaining proof of the extent to which seepage operates in adding to the flow of a stream, and said:

"Aside from this surplus water, some may be returned through overflow or the ditches or from seepage. What either of these amounts may be is not disclosed. Indeed, the extent to which seepage operates in adding to the flow of a stream, or in distributing water through lands adjacent to those upon which water is poured, is something proof of which must necessarily be almost impossible. We may note the fact that a tract, bordering upon land which has been flooded, shows by its increasing vegetation that it has received in some way the benefit of water, and yet the amount of water passing by seepage may never be definitely known. The underground movement of water will always be a problem of uncertainty."

We need not go back to inquire into the common-law rule respecting water rights, for the reason that in Smith v. Denniff, 24 Mont. 21, 60 Pac. 398, 81 Am. St. Rep. 408, decided in 1900, it was held that by necessary implication the state of Montana had assumed to itself ownership sub modo of rivers and streams in the state, and had expressly granted the right to appropriate waters of such streams, which right, if properly exercised, in compliance with the requirements of the statutes, vests in the appropriator full legal title to the use of such waters by virtue of the grant made by the state as owner.

It is established in Montana that the prior appropriator of water is entitled to the use of all the water in the stream to satisfy his appropriation, whether such water come from seepage or from the water naturally flowing in the stream. In Beaverhead Canal Co. v. Dillon Electric Co., 34 Mont. 141, 85 Pac. 882, the court said:

"The prior appropriator of a particular quantity of water from a stream is entitled to the use of that water, or so much thereof as naturally flows in the stream, unimpaired and unaffected by any subsequent changes which, in the course of nature, may have been wrought. To the extent of his appropriation his supply will be measured by the waters naturally flowing in the stream and its tributaries above the head of his ditch, whether those waters be furnished by the usual rains or snows, by extraordinary rain or snow fall, or by springs or seepage which directly contribute."

Again, under the doctrine that the prior appropriator is entitled to the quantity of water appropriated from the stream, the prior appropriator is entitled to satisfy that right, and it is immaterial whether such satisfaction is to be had out of the waters that naturally flow in the stream and its tributaries above the head of its ditch, or come from waters which run into the stream by rains, snows, springs, or seepage.

Referring again to Kansas v. Colorado, supra, the court held in effect that an upper riparian proprietor could not maintain a defense based upon a use to which he had appropriated the water by contending that he had given benefit to the lower proprietor. "The question," said the court, "will be one of legal right, narrowed to place, amount of flow, and freedom from pollution."

The doctrine of a right of use by appropriation is inconsistent with a claim of right of ownership of seepage not held in reservoir, and which is merely incidental to usual irrigation. Nor can an upper proprietor plead that by the use to which he had appropriated the water he had benefited the lower proprietor, or that the lower proprietor has received an equivalent.

In Smith v. Duff, 39 Mont. 382, 102 Pac. 984, 133 Am. St. Rep. 587, there was a contention that the respondents in that case were entitled to the use of certain waters of Willow Swamp by reason of water developed by the draining of the swamp from a canal; but the court held that whether the water which saturated the swamp came from subterranean springs or through percolation from higher adjacent lands, or whether it was supplied from a subsurface flow, was not apparent; yet the general principle was stated to be that the subsurface supply of a stream, whether from tributary swamps or runs in sand and gravel, constituting the bed of the stream, is as much a part of the stream as is the surface flow, and is governed by the same rules.

In Spaulding v. Stone, 46 Mont. 483, 129 Pac. 327, the court held that one who claimed upon the ground that he had developed a new supply of water must establish by satisfactory proof the amount which he has developed, especially when he has mingled his alleged new supply with that to which another is entitled, for he cannot justify an interference with a right which he does not question.

In Durkee Ditch Co. et al. v. Means et al. (Colo.) 164 Pac. 503, it was held that seepage water, which was originally diverted from a stream for irrigation and flowed into a gulch tributary to the same stream, could not be diverted from the gulch to the prejudice of the rights of senior appropriators on the stream. The court there held that the waters of the gulch, being naturally tributary to a certain creek, were not subject to independent appropriation and diversion, but would be considered a part of the stream, to be permitted to return to the stream for the benefit of other appropriators in the order of their priorities.

In Trowel Land & Irrigation Co. v. Bijou Irrigation District (Colo.) 176 Pac. 292, it was held that seepage waters from irrigation ditches and reservoirs, proceeding by open ditches or by percolation, on their return to, but not having reached, the stream which largely depends on such waters for supplying appropriations under a judicial decree, are tributary to the stream, and, after being drained into it by constructed ditches, may not be diverted as against the rights of prior appropriators. In states which recognize, at least in a modified way, the doctrine of riparian rights, doubtless the rules are different. Miller & Lux v. Madera Canal & Irrigation Co., 155 Cal. 59, 99 Pac. 502, 22 L. R. A. (N. S.) 391. The decisions of the courts of those states are not controlling in Montana.

Our conclusion is that the lower, but prior, appropriators are entitled to the uninterrupted flow of the waters of the stream and its tributaries, and that, where seepage water may have found its way

262 F.—20

into the creek, the prior appropriators are entitled to the use of such water, limited of course to the extent of the quantity of water judicially decreed to them from the creek. Weil on Water Rights, § 337. In the present case it must therefore follow that, inasmuch as the decree awarded Marks only 15 inches of water from Dutchman creek, he had no right to take from that stream 50 inches of water, and that he cannot justify his action upon the ground that he has benefited the lower appropriators, or has given to them the equivalent of what he has taken.

The judgment rendered was proper, and is affirmed.