## CLAUSEN, Respondent, *v.* ARMINGTON, Appellant.

No. 8822

Submitted May 10, 1949. Decided June 29, 1949.

212 Pac. (2d) 440

Mr. James T. Harrison, Malta, and Mr. James T. Shea, Glasgow, for appellant. Mr. Harrison argued the cause orally.

Mr. Fred C. Gabriel, Malta, Messrs. Hall, Alexander and Burton, Great Falls, for respondent. Mr. Burton argued the cause orally.

MR. CHIEF JUSTICE ADAIR:

This is an appeal by defendant, William Armington, from a decree for plaintiff, B. H. Clausen, involving the use of waters of Tallow Creek, in Phillips county, Montana, which flows intermittently at times of melting snow in the spring or after heavy rains.

The action was brought to require defendant to construct and install, at the head of the ditch used by him to divert his water from the creek, a proper and sufficient dam and head gate, pipe or other device, so that no more than thirty cubic feet of water per second of time shall be permitted to flow into and through such ditch to and upon the defendant's land and to enjoin defendant from so maintaining and using his ditch as to interfere with the beneficial use by plaintiff of the surplus water from said creek, below the head of defendant's ditch, to which plaintiff claims he is entitled for irrigating his land.

July 18, 1903, defendant's predecessor, Elise Harlacher, filed an appropriation of twenty-five cubic feet per second of the waters of Tallow Creek for the irrigation of the southeast quarter of section 16 in Township 26 north, Range 32 east.

February 20, 1913, Amos Sniff, also defendant's predecessor, filed an appropriation of five cubic feet per second of the water of Tallow Creek for the irrigation of the north half of the north half of section 21, Township 26 north, Range 32 east.

Harlacher's notice of appropriation states the water was diverted by a ditch "4 feet wide on bottom, 5 feet wide on top and 1 foot deep."

Sniff's notice of appropriation states the water was diverted by "a ditch 24 inches by —— inches."

The pleadings of the respective parties admit that the thirty cubic feet of water now claimed by defendant under the appropriations originally made by Harlacher and Sniff all flows in the one ditch now owned by defendant.

Albert Tetrault was the successor of said Harlacher and the predecessor of defendant Armington. In an action brought by Albert Tetrault against Joe W. Marsh, the predecessor of plain-

tiff Clausen, to quiet title to said ditch and the water right originally appropriated by Harlacher on the *public land*, which public land had subsequently been acquired by Marsh, and to restrain Marsh from interfering with Tetrault's right to go upon Marsh's land to repair his ditch and dam, a judgment was entered in August 1923 decreeing to Tetrault twenty-five cubic feet of water as originally appropriated by Harlacher by means of said ditch and restraining Marsh from interfering therewith.

The head of the ditch and a dam constructed by Harlacher and the ditch of said Sniff were all located upon public land described as the southwest quarter of the northwest quarter of section 22 and the south half of the north half of section 21, in Township 26 north, Range 32 east, upon which in March 1917, Marsh filed a homestead entry and for which on June 24, 1919, he received a patent, containing the usual provision that such grant is "subject to any vested and accrued water rights for mining, agriculture, manufacturing or other purposes and rights to ditches and reservoirs used in connection with such water rights," as required by sections 2339 and 2340, U. S. Rev. St., 43 U. S. C. A., sec. 661.

In June 1928 the patentee Marsh conveyed to one Brosseau, and in October 1934 Brosseau conveyed to plaintiff Clausen.

In December 1942 the administrator of the estate of Albert Tetrault, deceased, conveyed to the defendant Armington the lands for which said water rights were originally appropriated by Harlacher and by Sniff, together with the *appurtenances* thereto belonging.

It thus appears that the appropriations of the thirty cubic feet of water per second was made for a total of 320 acres and defendant testified that he irrigated "300 or 400 acres." There is nothing in the record to show that said lands were of a character to require for successful irrigation more than the ordinary amount or number of inches of water. Since two and a half cubic feet per second equals 100 miners inches, sec. 7108, R. C. M. 1935, thirty cubic feet of water when reduced to miners

inches is the equivalent of 1,200 miners inches which amount is here claimed for the irrigation of "300 or 400 acres" of land.

In Boehler v. Boyer, 72 Mont. 472, 234 Pac. 1086, 1089, it was contended that the trial court erred in awarding respondent two inches of water per acre. In sustaining the award this court said: "The evidence discloses that the Boyer land is *rocky and gravelly,* and requires a greater amount of water to the acre than does that of appellant * * *. The award of two inches to the acre is justified by the evidence." (Emphasis supplied.)

Should we assume defendant's land to be "rocky and gravelly" instead of being the ordinary soil of the usual farm land, it is manifest that defendant's appropriation of thirty cubic feet per second or 1,200 miners inches was more than the amount necessary to irrigate "300 or 400 acres" and that defendant therefore has no occasion for a *larger ditch* than is specified and stated in the above notices of appropriation and in the decree entered in 1923 in the action brought by Albert Tetrault against Joe W. Marsh and also in the judgment and decree entered November 20, 1947, in the instant case.

Idaho, by statute, fixes one cubic foot of water for fifty acres of irrigated land; North Dakota, by statute, fixes one cubic foot of water for eighty acres of irrigated land and certain other western states fix similar amounts per acre. See Kinney on Irrigation and Water Rights, Vol. II, p. 1598, sec. 906; Idaho Revised Codes 1908, Vol. 1, sec. 3253, and North Dakota Revised Codes 1905, sec. 7652.

The briefs herein devote many pages to discussion of easements, licenses, the Statute of Frauds and the validity of plaintiff's appropriations.

Under the evidence which in our opinion sustains the trial court's findings of fact herein, much of this discussion is wholly immaterial.

The dam and diversion ditch constructed by defendant's predecessors and by them completed in the year 1905 were wholly upon lands that were then public domain; hence the right of defendant and his predecessors to go upon such *public land*

which is now owned by plaintiff and to there construct such dam and ditch was not based on an *easement* granted by plaintiff to defendant or his predecessors, but it rests upon a reservation or grant from the United States to construct such dam and ditch on such public land.

In Rodda v. Best, 68 Mont. 205, 217 Pac. 669, 672, the court after quoting from the above cited federal statute, quoted with approval from Cottonwood Ditch Co. v. Thom, 39 Mont. 115, 101 Pac. 825, 104 Pac. 281, as follows: "Such acknowledgment, from so supreme authority, amounts to a grant of the right of way to those who, in good faith, prosecute the work of construction, over unoccupied public lands, with reasonable diligence to completion, for the purpose of applying the completed ditch or canal to a beneficial use." Again in the Rodda case, supra: "So that the plaintiff did not acquire his right to maintain this ditch across the land in question by enjoyment, but rather by grant from the United States and therefore the above-quoted section of the Code is not applicable here."

The Statute of Frauds requiring a writing for the showing of an easement over real estate where given by a private owner thereof to another party has no application to the situation here presented where the ditch and dam were built upon the public domain belonging to the government that was aiding, encouraging, and consenting to the building of dams, ditches and irrigation projects to reclaim and render productive lands which otherwise would be arid.

While defendant and his predecessors had a right to maintain ▇ and use the dam and ditch upon the land so patented to plaintiff's predecessor in interest, yet they also had certain duties to perform in connection with the maintenance and use of such water right, ditch and dam after the land was patented and a water right appropriated by plaintiff from said creek. The evidence shows and defendant's brief admits the 1903 appropriation of twenty-five cubic feet per second and the 1913 appropriation of five cubic feet per second of the water of Tallow Creek, making a total of thirty cubic feet, all of which was

diverted by the same ditch. The evidence further shows that the ditch as constructed by Harlacher, defendant's predecessor in interest, to conduct his appropriation of twenty-five cubic feet of water was *four feet wide on the bottom, five feet wide on top and one foot deep* and that the ditch constructed by Sniff, defendant's predecessor in interest, to conduct his appropriation of five cubic feet was ''24 inches by —— inches.'' In discussing the Sniff ditch in his brief defendant says: ''His ditch appears to have disappeared as we only deal here with the Harlacher ditch which carries according to the complaint and answer, the entire 30 cubic feet of water covered by both appropriations.''

It thus appears that defendant acquired a right for a ditch four feet wide on the bottom, five feet wide on the top and one foot deep and an appropriation for thirty cubic feet of water to be conveyed therein across land which at the time the rights were acquired was then a part of the public domain but which land is now owned by plaintiff.

After the appropriation of his water rights and the construction of the ditch sufficient to convey thirty cubic feet of water therein, what are defendant's duties to the patentee owner of the land whereon the ditch is built who also has made an appropriation of the waters of the creek in excess of said thirty cubic feet for use on the land so patented?

The courts have frequently construed the Act of Congress, 43 U. S. C. A., sec. 661, which governs the rights of parties who acquire patents to public land, already subject to rights of way for ditches, reservoirs and water rights.

In Snyder v. Colorado Gold Dredging Co., 8 Cir., 181 F. 62, 70, the court construed the Act and said: ''When the Mascot placer was patented to Wells he took it subject to the easement therein which had been acquired under the congressional enactment by the construction and use of the original Galena ditch while the placer was still a part of the *public lands,* but that easement extended only to the maintenance and use of the ditch, *substantially as then constructed,* for the purpose of diverting and carrying the volume of water *therefore appropriated,* and

did not give any right to enlarge the ditch, or to change its location, or to use it in diverting and carrying a largely increased volume of water. (Citing a long list of cases.) Thus it was essential that the right so to alter the ditch and to enlarge its use be acquired through a grant from Wells or through a resort to appropriate condemnation proceedings. But, as no such right was acquired, the change made in the ditch and its enlarged use were as unlawful and as much a trespass as would have been the construction and use of an entirely new ditch in the like circumstances.'' (Emphasis supplied.) The holding was that the owner of the patented land was entitled to an injunction enjoining the appropriator of the prior water right from enlarging the ditch and increasing the run of water therein.

In addition to the cases cited at page 70 of 181 F. in the Snyder case, supra, see also: Felsenthal v. Warring, 40 Cal. App. 119, 180 Pac. 67; White Bros. & C. Co. v. Watson, 64 Wash. 666, 117 Pac. 497, 44 L. R. A., N. S., 254; Prentice v. McKay, 38 Mont. 114, 98 Pac. 1081; 2 Kinney on Irrigation and Water Rights, sec. 781, 990 & 991; 67 C. J., "Waters," p. 960, sec. 490, pp. 1018-1019, secs. 446-448, and cases cited in notes 56-67; 56 Am. Jur., Waters, p. 751, sec. 303. See also: Dahlberg v. Lannen, 84 Mont. 68, 274 Pac. 151; Marks v. Hilger, 9 Cir. 262 F. 302, construing Montana law and cases; Galahan v. Lewis, 105 Mont. 294, 72 Pac. (2d) 1018.

While the ditch as originally constructed on this public land was only four feet wide on the bottom, five feet wide at the top, and one foot deep, yet it was of sufficient size to handle thirty cubic feet of water.

In 1939 plaintiff Clausen filed a notice of appropriation of all the water of Tallow Creek in excess of the thirty cubic feet called for by the Harlacher appropriation of 1903 and the Sniff appropriation of 1913. However, defendant's predecessors through the years had suffered their ditch to erode, wash, widen, deepen and enlarge, particularly at the point of diversion and below so that by the year 1939 the ditch was diverting all the

water in Tallow Creek at times when there was far in excess of thirty cubic feet of water flowing therein.

There was evidence received without objection that in the fall of 1940 plaintiff Clausen discussed with Albert Tetrault, the predecessor in interest of defendant Armington, the question of the use of the waters from Tallow Creek; that Tetrault said he heard Clausen had filed a water right on Tallow Creek and said: "We will get together and put in a gate so you can get some little water." "He said there was enough water for both of us;" that in the spring of 1941 plaintiff had another conversation with Tetrault about diversion of the water, at which time Tetrault said he had changed his mind about putting in a *gate* at the head of his ditch as that could be shut off, so as to steal his water, but that "whatever I put in have it big enough to let *his* water through." This testimony was corroborated by the witness Harris who was present during this conversation. There is evidence that that was the last time plaintiff ever talked with Tetrault; and that in the fall of 1941 he (Clausen) put in a galvanized steel pipe 36 inches in diameter and 12 feet long in an earthen dam which he constructed across the head of the Tetrault diversion ditch, which pipe was placed in the bottom of the ditch.

Plaintiff further testified: That he did this under the instructions from the soil conservation service; that Tetrault died in the spring of 1942, but that he had made no objection to the construction of this earthen dam or to the galvanized pipe in his ditch after it was so installed in 1941. There is evidence that this pipe would carry more than thirty cubic feet of water and that it complied with the suggestions made by Tetrault in the spring of 1941.

As a result of this dam and pipe Clausen in the spring of 1942 received the water in excess of the thirty cubic feet going through the pipe and which flowed over the spillway in the dam across Tallow Creek, below the head of defendant's ditch.

Prior thereto Clausen had received no appreciable amount of water from this spillway but thereafter and during the years

1942, 1943, 1944 and 1945 he received enough to irrigate 100 acres of alfalfa.

In December 1942 the defendant Armington purchased the Tetrault land and ditch from the administrator of the Tetrault estate.

In September 1945 defendant Armington asked plaintiff Clausen if he wanted to salvage any of the material that plaintiff had put into said dam at the head of the ditch, which consisted of the galvanized pipe and some three-inch plank across said dam, as defendant was going to take them out. Plaintiff advised defendant that he was without right to remove the pipe and plank but notwithstanding, defendant executed his threat and removed same. After the pipe and plank had been so removed the ditch was measured in November 1945 by John Mekesell, at which time the ditch was found to be twenty-six feet, six inches across the top; nine feet, six inches across the bottom and four feet, seven inches deep.

In April 1947, B. C. Lillis, an experienced consulting civil engineer, specializing in irrigation and drainage, examined the ditch, dam and spillway at which time he observed the pipe lying on the bank near the head of the ditch. At the trial Mr. Lillis testified: That the point where the pipe had been installed in the ditch would be the logical place to put it; that at that time the canal was about nine feet wide on the bottom and close to five feet deep; that the flow of water therein was quite uniform; that he went to the low place in the dam through which any flood waters not entering the ditch should flow on down the creek and there observed that below this point the water spread out on the meadow-land and *was prevented from returning to the creek channel below the dam by a low dike extending to the west;* that this *dike* was on plaintiff's land; that the *levels at the crest of the dam were approximately correct to make the pipe flow full of water before any water would go over the crest of the dam;* that the pipe was 36 inches in diameter and 12 feet long and with water two and a half inches above the top of the pipe it would carry thirty cubic feet per second;

that he observed the high water mark on the ditch itself, which mark was about four feet high; that after the removal of the pipe, when the ditch carried water to the depth of four feet deep it would be carrying about 200 cubic feet of water; that when it carried water to the depth of three feet it would be carrying about 130 cubic feet of water. With 200 cubic feet in the ditch or 170 cubic feet in excess of defendant's appropriation of 30 cubic feet, the excess in 24 hours would put water one foot deep over 340 acres.

The witness Lillis further testified: That he studied the situation on the ground and concluded that the most practical way of dividing the water so that the defendant Armington would get the thirty cubic feet of water called for by his appropriation and the plaintiff Clausen the excess called for by his appropriation was by the method which they had employed for several years, namely by using the 36-inch pipe and having the crest of the dam at an elevation that would assure the pipe being full before any water went over the dam and that the problem of dirt and silt collecting in the pipe was easy of solution.

It was the legal duty of defendant and his predecessors to maintain and use the ditch substantially as it was constructed upon the public domain, and the patentee Marsh acquired his land subject to such duty and limited rights, as did his successors in interest. Defendant and his predecessors in interest failed to discharge their duties, as they did nothing to confine the ditch to its original capacity and they suffered and allowed the ditch to erode, widen and deepen until it diverted and carried substantially all the water in said creek, thereby depriving Clausen of his appropriation of the water in excess of said thirty cubic feet.

It was to correct and remedy this situation that plaintiff installed the pipe after first talking with Tetrault.

By doing this, the surplus water in excess of the quantity to which Tetrault or his successor, Armington, was entitled, would flow over the spillway of the dam onto plaintiff Clausen's land

in section 21 where he could and did divert it onto his alfalfa land.

Defendant contends that plaintiff installed the pipe under a revocable license from defendant's predecessor Tetrault and that defendant' Armington revoked this license when he removed the pipe and dam, thereby terminating plaintiff's rights thereunder and that plaintiff now has no right of any kind in or upon the ditch.

The evidence shows that when Clausen after his conversation with Tetrault went ahead at his own expense and made the installations in the ditch so as to only divert the amount of the original appropriation, he was merely doing, under an amiable agreement with Tetrault what it was the legal duty of Tetrault himself to do, namely, to prevent the ditch from becoming so eroded and enlarged as to divert more water than that to which he was entitled.

The defendant Armington may not by wrongfully tearing out the pipe and dam acquire a right to do that which neither he nor Tetrault ever had any legal right to do, that is, to enlarge and use a ditch constructed on public land, carrying an excess of the appropriated thirty cubic feet per second of water.

The defendant Armington testified that after he removed the pipe in 1945 he did not want any device or arrangement placed in the ditch to control its flow. Defendant's acts were not done in an attempt to revoke a license but they were done in an attempt to capture and use all the waters of Tallow Creek irrespective of the amount thereof and in utter disregard and denial of plaintiff's right to have and use the excess over and above the thirty cubic feet to which defendant's appropriation entitles him. Allowing another at his own expense to do that which it was the legal duty of a person to do himself, does not create the relation of licensor and licensee, whereby the person allowing the thing to be done can, after it is done, revoke the permission and profit thereby.

Great Falls Waterworks Co. v. Great Northern Ry. Co., 21 Mont. 487, 54 Pac. 963, holding the parol license there granted

could be revoked at any time is cited and relied upon by defendant. While that case has been followed in several later Montana cases, none involve a factual situation similar to the case at bar where the head of the ditch and the dam were located on public lands subsequently acquired by plaintiff who then made a junior appropriation of water for his land out of the excess flow of the stream over the thirty cubic feet per second to which defendant's appropriation entitled him.

In Connolly v. Harrel, 102 Mont. 295, 57 Pac. (2d) 781, the court distinguished the Great Falls Water Works Co., case, supra, and held that where the defendants went upon the land of Jensen with his consent and posted a notice of appropriation and directed their water through his ditch, they were not trespassers and their use of such water was a valid appropriation, stating that the prior Montana decisions are limited to cases of trespass.

In the case at bar plaintiff was not a trespasser when he went to the ditch located on his *own land* and at *his own expense* and at the express suggestion and with the implied consent of defendant's predecessor, made the installation in the ditch, so as to effect an equitable division between them of the waters of Tallow Creek.

In Sheehan v. Kasper, 41 Nev. 27, 165 Pac. 632, involving water rights, the court held that an executed parol license, though without consideration, is irrevocable, following its earlier decision in Lee v. McLeod, 12 Nev. 280, also involving water rights and dams. To the same effect see also the following cases involving ditches: Foster v. Foster, 107 Or. 355, 213 Pac. 895; Miller & Lux v. Kern County Land Co., 154 Cal. 785, 99 Pac. 179; Rentfro v. Dettwiler, 95 Mont. 391, 26 Pac. (2d) 992, based on somewhat similar facts and circumstances. See also: 37 C. J., Licenses, p. 292, sec. 195, and long list of cases cited in note 57; 53 C. J. S., Licenses, p. 816, sec. 90 and cases cited; 33 Am. Jur., "Licenses," p. 408, sec. 103.

Defendant also contends that the trial court erred in finding that plaintiff had made a valid appropriation of water, asserting that the question of plaintiff's water right was not an

issue. However, the complaint alleges that on November 15, 1939, plaintiff appropriated all the flow of Tallow Creek over and above the appropriation of thirty cubic feet per second made by defendant's predecessors, and defendant's answer denies such allegation so that plaintiff's water right was clearly an issue and the trial court's finding on such issue is correct.

Defendant further contends that because plaintiff did not within forty days after posting his notice of appropriation "proceed to prosecute the excavation or construction of the work by which the water to be appropriated is to be diverted," he never made an appropriation. However, a person may make a valid appropriation of water by actual diversion and use thereof without filing a notice of appropriation as defined in sections 7100 to 7102, R. C. M. 1935. See: Murray v. Tingley, 20 Mont. 260, 50 Pac. 723; Bailey v. Tintinger, 45 Mont. 154, 122 Pac. 575. Above cases approved in: Musselshell Valley F. & L. Co. v. Cooley, 86 Mont. 276, 283 Pac. 213; Anderson v. Spear-Morgan Livestock Co., 107 Mont. 18, 79 Pac. (2d) 667.

Not having constructed a ditch from Tallow Creek within a reasonable time after November 15, 1939, the date of his notice of appropriation, plaintiff's appropriation would not under sections 7100 to 7102, R. C. M. 1935, relate back to that date, but under the authorities cited above, would date from the spring of 1942 when he directed the water onto his land and continued to do so in 1943, 1944 and 1945, before defendant in the fall of 1945 removed the pipe and dam from his ditch so as to prevent any further use of the water by plaintiff.

Under somewhat similar circumstances a valid appropriation of water was held to have been made in the case of. Connolly v. Harrel, supra. See also: Long on Irrigation, secs. 118, 119, 126 and 133.

The trial court's findings of fact are sustained by ample evidence and its conclusions and decree and judgment based thereon are correct. Accordingly the judgment is affirmed.

Associate Justices Angstman, Freebourn, Metcalf and Bottomly, concur.

On Petition for Rehearing.

MR. CHIEF JUSTICE ADAIR:

Defendant Armington has filed a petition for rehearing. Such petition "may be presented upon the following grounds and none others: That some fact, material to the decision, or some question decisive of the case submitted by counsel, was overlooked by the Court, or that the decision is in conflict with an express statute or controlling decision to which the attention of the court was not directed." Rule of Court XV, subdiv. 2.

Defendant's petition is based upon all the grounds mentioned in the rule.

Defendant opens his argument with the statement: "This cause involved an action for injunctive relief and nothing else." He then states that all the plaintiff was demanding was mandatory relief to force defendant to reinstall an orifice and dam in his diversion ditch and injunctive relief to enjoin defendant from removing the dam and orifice after the same had been reinstalled urging that the question of water rights was not before the court at all and that this court's decision holding that plaintiff acquired a water right in 1942 "arbitrarily and unjustly gives to the plaintiff and respondent in this case rights that he never had or claimed to have."

In paragraph V of the complaint it is alleged that "about the 15th day of November, 1939, plaintiff herein appropriated all of the flow of said Tallow Creek *over and above and subject* to the prior appropriations made by the predecessors of defendant in the amount of 30 cubic feet per second as set forth in paragraph IV hereof * * *"

These allegations are denied in the answer, paragraph 3 thereof reading: "Answering the allegations contained in paragraph V thereof, defendant denies that he has, and alleges that he does not have any information or knowledge sufficient to form a belief as to the truth of the facts therein alleged and therefore denies the same."

In paragraph 4 of his answer defendant admits that the di-

version ditch "was and is capable of carrying 30 cubic feet per second of the waters of said Tallow Creek so appropriated," but denies the allegations of paragraph VI of the complaint to the effect that said "diversion ditch as so constructed was and is capable of carrying a much greater amount of the waters of Tallow Creek than the 30 cubic feet per second appropriated and used by the predecessors of defendant, and was capable of and did divert and carry all of the flow of water in said Tallow Creek so that none of said waters were available for the use of plaintiff."

In paragraph 6 of his answer defendant alleges that on December 9, 1942, he purchased the described lands, water, dam and ditch, of which he has since been the owner and to which he has and is entitled to the possession and exclusive use and that the dam and pipe installed by plaintiff in the fall of 1941 wrongfully and unlawfully obstructed defendant's diversion ditch and the flow of water therein. These allegations of paragraph 6 of the answer were denied and placed in issue by plaintiff's reply.

The prayer of the complaint is for an order and decree: (1) To require defendant "to reinstall said orifice and dam in said diversion ditch as provided for in the agreement between plaintiff and Tetrault;" (2) to enjoin and restrain defendant "from removing said dam and orifice after the same has been reinstalled;" and (3) "For such other and further relief as to the court may seem equitable, proper and just."

It is apparent from the pleadings that the first and chief purpose of the suit was to obtain a decree that "defendant be required to reinstall said orifice and dam" which, in the fall of 1945, he had removed over plaintiff's protests and objections.

To support his contention that in this action the court was without right to determine and hold that plaintiff acquired a water right in 1942 the defendant cites and relies upon the cases of: State ex rel. Reeder v. District Court, 100 Mont. 376, 47 Pac. (2d) 653; National Bank of Montana v. Bingham, 83 Mont. 21, 35, 269 Pac. 162; Gibbons v. Huntsinger, 105 Mont.

562, 574, 74 Pac. (2d) 443; and Blinn v. Hutterische Society of Wolf Creek, 58 Mont. 542, 551, 194 Pac. 140.

On issues squarely presented by the pleadings the respective rights of the respective parties to the use of waters of Tallow Creek, evidence determinative thereof was introduced without objection. In this respect the instant case differs from the cases above cited, rendering them wholly inapplicable.

Defendant asserts that plaintiff was a trespasser and that his ▮ license should be revoked. The undisputed evidence shows that at a time when Tetrault owned the property, plaintiff made the installations with Tetrault's consent and that thereafter defendant purchased the property from Tetrault. Having made the installation with the owner's consent plaintiff was no trespasser and he showed a right in himself to require defendant to reinstall the dam and orifice and to have defendant enjoined from further molesting or interfering with same when reinstalled.

Defendant asserts that the water appropriated by plaintiff ▮ was "artificial water" and not subject to appropriation, citing 1 Kinney on Irrigation & Water Rights, 2d Ed., sec. 316, 473, and sec. 662 of Volume 2. The sections cited fail to sustain defendant's contention. Plaintiff did not make his appropriation from "Man-made ditches, canals, tunnels, flumes, or other artificial conduits constructed for the purpose of conveying water," as defined in the authority cited. The water that passed over the spillway in defendant's dam onto plaintiff's land was "surplus water" in excess of the 30 cubic feet per second of time to which defendant was entitled.

Section 7097, R. C. M. 1935, defines "surplus water" and requires that a prior appropriator must "turn, and cause [it] to flow back into the stream." See Tucker v. Missoula Light & Ry. Co., 77 Mont. 91, 101, 250 Pac. 11, 15, where the court in construing said section said: "It is his duty to permit the excess to remain in the creek or, having diverted it, to return it to the creek in such manner that it will be available to subsequent appropriators or decreed rights." See also Galiger v. McNulty, 80

Mont. 339, 356, rehearing page 359, 260 Pac. 401, page 406; Gans & Klein Inv. Co. v. Sanford, 91 Mont. 512, 522, 8 Pac. (2d) 808, 811, where the court held that, subsequent appropriators of water "may compel * * * a prior appropriator, to release water for their use which he does not need for a beneficial purpose." See also Volumes 1 and 2 Kinney on Irrigation & Water Rights, 2d Ed., secs. 321, 727 and 783.

Defendant contends that for plaintiff to make a valid appropriation he must actually divert the water from the channel of the stream and that this was not done. In other words, defendant claims that after the water goes over the spillway onto his land, plaintiff must allow the water to flow back into the channel of the stream which plaintiff testified was considerably lower than the spillway, and then construct a dam in the stream so as to raise the water to the height of plaintiff's land and then divert it by a ditch from the channel of the stream so dammed. Such would be an idle, useless and expensive procedure. "All that is necessary to make a valid appropriation is that there be an actual diversion of the water from the natural channel or other *source of supply,* with an intent to apply it to some beneficial use, followed by an actual application of the water either to the use designated or to some other within a reasonable time, and *any lawful means* toward obtaining that end may be used." 2 Kinney on Irrigation & Water Rights, 2d Ed., sec. 825; see also, sec. 723. (Emphasis supplied.)

The witness Lillis, a duly qualified engineer and expert on irrigation problems, testified that after the surplus water passed over the spillway it spread out over the meadowland, which was plaintiff's land and was prevented from returning to the creek channel below the dam by a *low dike* running to the west. Plaintiff Clausen testified that he only diverted the water that came from Tallow Creek at two designated points, both on his land, when and as the water left the spillway; that during the haying season when a freshet came down Tallow Creek, he would put hay in the spillway to prevent the water going *down his ditch onto his hay,* and that he irrigated about 100 acres of

alfalfa during the years 1942 to 1945 from the water so diverted. Thus the uncontradicted evidence show that plaintiff did divert and use this water for a beneficial purpose. This constituted a valid appropriation under the Montana authorities cited in the opinion. See also, 2 Kinney on Irrigation & Water Rights, 2d Ed., secs. 730 and 825.

The evidence as to the diversion and the beneficial use of the water by plaintiff after this surplus water passed over the spillway was admitted *without objection* and the complaint is deemed amended to show such appropriation in 1942 and before defendant acquired the Tetrault property. Harbolt v. Hensen, 78 Mont. 228, 253 Pac. 257; Ellinghouse v. Ajax Live Stock Co., 51 Mont. 275, 152 Pac. 481, L. R. A. 1916D, 836 and notes.

Defendant asserts there is no evidence to show the ditch was not as large in 1917, when Marsh filed on the public land now owned by plaintiff, as it was in 1939 when plaintiff filed his notice of appropriation. If such was a fact it was the duty of defendant to show it at the trial and not to so speculate and surmise in the petition for a rehearing. But assuming for the moment that such a condition was possible even in the face of the fact that the ditch had 22 years to enlarge after Marsh filed on the land in 1917, the evidence conclusively shows that neither defendant nor his predecessors had any need or use for a ditch at any time larger than the one described in the notice of appropriation by Harlacher in 1903, to-wit: four feet wide on bottom, five feet wide on top and one foot deep, and sufficient to irrigate 300 to 400 acres. Under such circumstances the plaintiff could legally appropriate so much of the surplus water in excess of defendant's prior appropriation as plaintiff had put to beneficial use. In the year 1942 plaintiff placed such water to beneficial use and defendant was without right to tear out the orifice and dam which had been placed in said ditch in the fall of 1941 with the consent of the then owner Tetrault and which were required to enable plaintiff to obtain the water which he has so appropriated.

The judgment of the trial court which inter alia requires

defendant to erect, construct and install a proper and sufficient dam, gate or other device so that not more than 30 cubic feet of water per second of time will be permitted to flow through such ditch upon the lands of defendant was correct. Wanting in merit the petition for rehearing is denied.

Associate Justices Freebourn, Angstman, Metcalf and Bottomly, concur.

Rehearing denied December 12, 1949.