EDWARD JONES, Plaintiff and Respondent, v. CARL MARTIN HANSON et al., Defendants, and I. CECILLE HANSON, Defendant and Appellant.

No. 9487.

Submitted November 21, 1957. Decided January 30, 1958.

320 Pac. (2d) 1007.

Edward C. Alexander and Hall, Alexander & Burton, Great Falls, for appellant.

Edward C. Alexander, Great Falls, argued orally for appellant.

David J. Ryan, Smith & Paul, Great Falls, for respondent. Marvin J. Smith, Great Falls, argued orally for respondent.

THE HONORABLE GUY C. DERRY, District Judge (sitting in place of MR. JUSTICE BOTTOMLY, because of latter's illness.)

This appeal is from the judgment of the district court of the ninth judicial district, in and for the County of Teton. The action was brought by the plaintiff for the purpose of having the ownership of the waters of certain springs determined, and to have the defendant enjoined from interfering with the full use of such springs by the plaintiff. The pleadings are voluminous, but the issues are narrowed to the question of whether the plaintiff is entitled to the full use of the waters of Bynum Springs, which are located on land belonging to the defendant, for the irrigation of plaintiff's land located some distance from the springs; and the further question of whether the plaintiff is entitled to an easement over the lands of the defendant for the purpose of doing whatever is necessary to bring the water from the springs to the place where it is diverted by the plaintiff. The factual situation is somewhat involved, but we think a fair summary of the situation presented by the evidence and the pleadings is that three springs, which are referred to and designated in the pleadings and in the evidence as the "Bynum Springs," rise on land now belonging to the defendant and to her predecessors in interest since July 1910. These springs, while on different subdivisions of defendant's land, are in close proximity to each other, located on the side of a hill from which they percolate by gravitation until they eventually join and enter into a coulee which is known as "Bynum Coulee." After entering the natural channel provided by such coulee, the water proceeds for a considerable distance to a succession of reservoirs or dams which had been built by the predecessors in inter-

est of the plaintiff. At that time the land where the springs are located was part of the public domain.

The right of the plaintiff to the waters from Bynum Springs is claimed under two appropriations made by plaintiff's predecessors in interest. He also claims a title by prescription. Certified copies of the notices of appropriation were introduced in evidence. One appropriation made on April 28, 1902, shows that James and Elizabeth Ferguson gave notice of appropriation of ten cubic feet per second of time "of the waters of Bynum Springs Coulee" and which further set forth that "said waters are diverted from said stream by means of two dams and three ditches, tapping said stream, upon its either bank at a point there so situate in said sections 17 and 18, and running thence in an east and west direction to and upon the above-described lands." A second appropriation was made by one Evan Jones, predecessor in interest of the plaintiff, on October 21, 1907, and in such notice of appropriation it is stated, "I have appropriated two cubic feet per second of time of the waters of a certain spring and coulee in the County of Teton" and that "the purpose for which the water is claimed is for irrigation and domestic purposes, and especially for irrigating my desert land claim * * * which is the place of intended use." From the notice the "spring" is not identified but from description could not be on land of defendant as appears from reading same. In this notice, it is stated that "said waters are diverted *from said stream* by means of a dam and ditch tapping *said stream on its south bank,* at a point thereon situate, NE 4, NE 4, Sec. 23, T. 27 N., R. 5 W., and running thence in a northeasterly direction to and upon the above-described land, that the size of said ditch is 24 inches in width on the bottom thereof and 36 inches across the top thereof, by 12 inches in depth." It is thus shown by the record that the point of diversion, and the ditches in question were all located on land then owned by plaintiff's predecessors in interest and now belonging to the plaintiff. The evidence discloses no such ditch around the Bynum Springs. There is nothing in the notice

of appropriation of either Ferguson or Jones which shows the point of diversion to be at or anywhere near the springs. The evidence shows without dispute that Bynum Coulee, which carries water to the dams and reservoirs constructed by plaintiff's predecessor in interest, also carries a considerable volume of flood-water and spring run-off; all of which water is covered by the appropriation of defendant's predecessors in interest because the appropriations are to the waters of *Bynum Springs Coulee,* and are not limited to water coming from the springs. In fact the springs are neither identified nor referred to in the notices. The undisputed evidence is that the springs are located upon land now belonging to the defendant, which were the subject of a homestead entry by one Carl Hanson, made by him on July 11, 1910, and on which a patent was issued to him on June 5, 1915. In 1906 and 1907 the plaintiff had placed boxes around two of the springs so that the same could be used to obtain drinking water, and at all times material to this action, the springs were used for supplying drinking water to people living in that vicinity, and also to water livestock which ranged upon the public domain, and has at all times been used for domestic purposes by defendant and her predecessor in interest. It also appears from the evidence that at the time the appropriations of water were made, it was the belief of the plaintiff and his predecessors in interest that the springs were located on the land of plaintiff's predecessors in interest.

The evidence shows that the water from the springs percolate over and through the soil of defendant's land down the hillside, and, through the years, has created something of a bog around the springs. In the course of arriving at the Bynum Coulee, the water from the springs spreads out over a small tract of land which has been used for pasture belonging to the defendant.

The defendant does not question that the plaintiff is entitled to the use of the waters of Bynum Springs, but takes the position that the plaintiff takes the waters in the condition in which

he found them at the time of such appropriation; that plaintiff has not acquired an easement to go upon the land of the defendant for any purpose connected with such springs or to interfere with the water as it proceeds in its normal course, as long as it remains on defendant's land. She further contends that the plaintiff has not acquired any rights, either by appropriation or by prescription, which would interfere with the use of this water by the defendant for domestic purposes, including its use in watering her livestock, and the advantage that is gained by defendant in the natural irrigation of a small tract of land which is benefited as water travels from the springs to the Bynum Coulee. There was no showing that any ditches had been constructed to bring the water of the springs to Bynum Coulee except one so-called furrow ditch which will hereafter be referred to. At least this is true insofar as applying to ditches on defendant's land.

By its findings and decree, the trial court found that plaintiff's claim of ownership to the use of the waters of the springs from the date of appropriation has been actual, open, exclusive, notorious, adverse, visible, continuous and uninterrupted; that the defendant has no right or title to the springs known as Bynum Springs located on the land now owned by her, nor to the use of the waters therefrom; that the plaintiff is entitled to, as against the defendant, the use and benefit of all the waters flowing from Bynum Springs; that the plaintiff has the exclusive right to box, ditch and clean the three springs known as Bynum Springs, to fence and protect the same from trespassing cattle, sheep, or horses, or any livestock whatsoever, and to do whatever may be necessary to maintain and keep up the flow of water from said springs, and to go upon defendant's land where the three springs are located for the purpose of accomplishing the same; that the defendant has no interest in and to the three springs known as Bynum Springs or the waters flowing therefrom, and that the plaintiff has the exclusive right to the use of all of the waters of Bynum Springs for domestic purposes, for watering of sheep, cattle, and livestock, and for

the purpose of irrigating and watering the lands and premises owned by him; that the defendant is permanently restrained and enjoined from in any manner interfering with the plaintiff's right to the use of all of the waters from Bynum Springs, or from interfering in any way with the free flow of the waters of the springs known as the Bynum Springs, and from interfering with plaintiff boxing, ditching, cleaning or fencing Bynum Springs to protect the same from trespassing cattle, sheep, hogs or any livestock whatsoever, or doing whatever may be necessary to keep up and maintain the flow of water of said Bynum Springs or interfering with the plaintiff going upon defendant's land where said three springs are located, for the purpose of accomplishing the same; that plaintiff have and recover his costs.

Since the findings of the district court were favorable to the plaintiff, we will review the evidence in that light, in order to determine whether the court's findings and decree are sustained by a preponderance of the evidence.

There is no dispute in the evidence as to the appropriations made by plaintiff's predecessors in interest, which are the basis for his claim to the waters of Bynum Springs. The appropriation was from Spring Coulee, not the springs. Since the point of diversion (which has never been changed) was not at the springs, but was at a point on Bynum Coulee, on a dam or reservoir constructed for the purpose of impounding the waters; the only basis for claiming ownership of the waters of the springs, with the right to the relief granted by the court, must necessarily be based on a title by prescription. To sustain the burden of proof, the plaintiff showed that in 1906, or thereabouts, there were constructed two boxes, one around each of two of the three springs, as to the purpose for which this was done, the record shows the testimony of the plaintiff as follows:

"Q. Will you tell the court what the purpose was in boxing these springs in? A. Well, we boxed them up so we could

haul water from them when we wanted it. We hauled water in those days in four barrels on a wagon, twice a week.

"Q. You were using the water from those springs? A. Yes, for domestic purposes. We had eight or ten men and it would take a lot of water. In June or April, it didn't take too much.

"Q. How long did you use the water out of those springs for domestic purposes? A. Been using it ever since, off and on.

"Q. You mean down to the present time? A. Until yesterday, I hauled a barrel of water from the east spring at 5 :00 o'clock. My daughter went up there with me."

It was developed by cross-examination of the plaintiff, and by other testimony, that the plaintiff has in recent years used the water from Aldrich Springs, which are not on the premises of the defendant. He had a thousand barrel cistern at his home. From the preponderance of the evidence, we feel that the court was hardly justified in finding, if it was the intention of the court to so find, that the plaintiff had used the water for drinking purposes at all times since 1906. From the evidence it would appear much more likely that he was continuing to haul water occasionally solely to keep in effect his claim to the use of the water. Regardless of this, however, it is clear from the testimony that at the time this spring was boxed by the plaintiff, it was used generally by all of the people in that vicinity who required drinking water or water for steam-threshing rigs, and it was also a place where livestock on the open range came to drink. It definitely appears that defendant's predecessors in interest, as well as defendant, had used the spring for the purpose of watering their livestock ever since the place had ceased to be public domain. Likewise, it is shown that at all times since the box was installed, it was used generally by the public. Some forty years prior to the trial, a trough for the purpose of watering livestock was installed by defendant's predecessor in interest, near one of the springs, and a pipe was constructed from the spring leading

into the trough. The plaintiff tacitly admits this fact as evidenced by the following testimony given by him during the trial:

"Q. The fact remains that the trough is there and has been for over forty years? A. It can stay there for another forty years, but he will have to keep his cattle off of that water, I won't allow him.

"Q. But the fact remains it has been there all those years? A. I won't allow it, I've got papers in my pocket if you want to read them."

At one point, plaintiff testified the watering trough was built and had been continuously used by defendant and her tenants for watering livestock for twenty years after he had thrown out the pipe.

Accepting plaintiff's version of the matter, he establishes as good a case for prescriptive title to the use of the water from the springs for defendant, as he does for himself, by stating that he had objected to using the pipe in the springs to permit filling the watering trough on one or more occasions, but that at the time he had taken out the pipe, it had been immediately returned and had been left there and used by defendant for the past twenty years. However this may be, under the proof made, the trial court must, of necessity, have found [the use of the springs after the boxing thereof by plaintiff was not exclusive in the plaintiff, but on the contrary was generally used by many people who neither had any interest in the land on which the springs were located or claim to the water by appropriation.

In the early case of Toohey v. Campbell, 24 Mont. 13, 17, 60 Pac. 396, this court laid down the rule that every appropriation of water must be made for a beneficial and useful purpose, and that it becomes the duty of the courts to try the question of the claimant's intent by his acts and the circumstances surrounding his possession of the water, its actual or contemplated use, and the purposes thereof in order to determine whether there was a valid appropriation for beneficial

use. Under the evidence offered here, it would appear that at the time the springs were boxed, the plaintiff had no thought that it was being done in connection with the use of the water for irrigation purposes or to assist in the natural flow thereof.

In any event, the use of the springs as a watering place ██ . for cattle and of the neighborhood generally for drinking water is undisputed. There, is no showing by plaintiff that his use of the water was to the exclusion of others and since the springs were not subject to the complete domain and control of the plaintiff, it necessarily follows that the boxing of the springs did not constitute a valid appropriation of water for any purpose, nor could it be one which would ripen into a title by prescription. Likewise, it can in no way aid the appropriations made on Bynum Coulee by plaintiff's predecessors in interest, where no connection is shown by such notice. It is elementary here, that rights of plaintiff based on appropriations on Bynum Coulee must be distinguished from rights gained, if any, by virtue of boxing and using the springs. The case of Robinson v. Schoenfeld, 62 Utah 233, 218 Pac. 1041, 1042, had a very similar factual situation to that here found. In that case, the action was to determine the conflicting claims to the use of the waters of two springs. The springs were located upon unsurveyed public land. The plaintiffs were owners of a ranch and engaged in farming and stock raising in the vicinity of the springs. It was the contention of the plaintiffs that the waters of the springs had been used by them and their predecessors in interest for more than twenty years for watering cattle kept on plaintiffs' ranch, and that the plaintiffs were the owners and in possession of the springs. Plaintiffs sought an injunction to restrain the defendants from interfering with their use and enjoyment of the same. Plaintiff had done certain work in and about the springs which was very similar to that done by the plaintiff in the case before us. The court in its decision makes this statement: "The proof fails to show any use or appropriation of the waters of the springs by plaintiffs or their predecessors in interest to the exclusion

of others having stock running at large upon the public domain in their vicinity. * * * Plaintiffs' testimony, without dissent, shows that other stock owners having cattle on this range had enjoyed the same rights and privileges with respect to the waters of the springs here in question as did plaintiffs. In other words, the ownership and use proven by the plaintiffs were in no sense exclusive or subject to the complete dominion and control of plaintiffs. We are therefore of the opinion, and so hold, that the plaintiffs' testimony did not show such appropriation or use of the waters of the springs as would authorize the trial court to decree to plaintiffs the use of the waters against defendant." The court in its opinion, quoting from the earlier case of Lake Shore Duck Club v. Lake View Duck Club, 50 Utah 76, 82, 166 Pac. 309, 311, L.R.A. 1918B, 620, said:

" 'But for the purpose of effecting a valid appropriation of water under the statutes of this state we are decidedly of the opinion that the beneficial use contemplated in making the appropriation must be one that inures to the exclusive benefit of the appropriator and subject to his complete dominion and control.' See, also, section 759 et seq., 2 Kinney on Irrigation.''

Such a rule has application to the factual situation in this case. While the precise question does not appear to have been presented to this court, there is nothing in our statutes which would reject its application, and it is based on a common-sense interpretation of our laws relating to appropriation of water.

The plaintiff acquired no rights by prescription.

The only ditch (referred to in proof as a furrow), shown to have been constructed upon the land of the defendant to take water from one of the springs, was built in 1913 according to the testimony of the plaintiff. Defendant's case showed that it was built at an earlier time, but both agree that the furrow was put in after homestead entry thereon, and the land had ceased to be public domain. In this connection, it should be noted that this court has consistently held that the entry-

man on the public domain takes only subject to such rights, ditches, and so forth as had been constructed before homestead entry. Lowry v. Carrier, 55 Mont. 392, 177 Pac. 756; Dahlberg v. Lannen, 84 Mont. 68, 274 Pac. 151; Clausen v. Armington, 123 Mont. 1, 212 Pac. (2d) 440. Here the furrow ditch was made after homestead entry, and hence initiated in trespass. The matter of the acquisition of the use of water by appropriation on the private property of another has been the subject of numerous decisions of this court. In the early case of Prentice v. McKay, 38 Mont. 114, 98 Pac. 1081, the court dealt at length with this question. While the Prentice case has been modified to some extent by the decision of this court in the case of Connolly v. Harrel, 102 Mont. 295, 57 Pac. (2d) 781, the rule still stands as to the method by which one may acquire an easement on the land of another, *when the same is initiated in trespass,* and this was established by the undisputed evidence in this case. In the Prentice case, supra, 38 Mont. at page 117, 98 Pac. at page 1083, the court laid down the rule as follows: "The United States and the State of Montana have recognized the right of an individual to acquire the use of water by appropriation [Citing statutes and cases.] but neither has authorized, nor, indeed, could authorize, one person to go upon the private property of another for the purpose of making an appropriation, except by condemnation proceedings. The general government has merely authorized the prospective appropriator to go upon the public domain for the purpose of making his appropriation [Citing case.] and the statutes of this state * * * only apply to appropriations made on the public lands of the United States or of the state." The court further held in this case that one may not acquire a water right on the land of another without acquiring an easement in such land, and that an easement cannot be created granted, or transferred except by operation of law, by an instrument in writing, or by prescription. It was also held that the right to appropriate water on the land of another may be acquired by condemnation proceedings.

In the case of Great Falls Waterworks Co. v. Great Northern Ry. Co., 21 Mont. 487, 54 Pac. 963, it was held that in a case where a license to lay a water main over or through land was given by parol, that because no interest in the land was given, the license may be revoked at any time, even after it had been executed and money expended in reliance thereon. In the case of Prentice v. McKay, supra, 38 Mont. at page 118, 98 Pac. at page 1083, in referring to the grant of an easement and citing the above case, the court had this to say: "So far as this record discloses, the transaction between S. C. Prentice and Mrs. Prentice amounted only to a license by the former to the latter to take the water from the springs and stream to her land, and, not being a license coupled with an interest, nor one for which a valuable consideration was paid, it was revocable at the pleasure of the licensor or his successor in interest [citing case]; and the actions of the defendants in this particular instance in obstructing the use of the license, amounted to a revocation thereof."

In this case, the action of the defendant in obstructing the use of the furrow, where same was constructed on her land, for the conveyance of water from one of the springs to the land of the plaintiff, constituted a revocation of the license, if, in fact, one was ever given.

The evidence in this case having established that the waters from the springs in question, following their normal course, and in natural channels as of the date of the appropriation made by the plaintiff, flowed by gravitation into the Bynum Springs Coulee and that this water proceeded down the coulee into reservoirs or dams to the point of diversion; the right to the use of such water after it leaves the defendant's land as between the parties hereto is in the plaintiff. This fact is not in dispute, and according to the record in this case the defendant has never claimed otherwise.

Since the status of the springs as percolating waters is not raised here, no discussion of that question is had, nor is this

decision intended to vary any decisions of this court on the status of percolating waters as such.

We do not find any evidence in the record which would justify the court in decreeing that the plaintiff is entitled to the full use of all the waters originating in the springs, neither is there any evidence to justify the finding that the plaintiff is the owner of the springs and has an easement for the purpose of changing the course of, or interfering with the natural flow of the springs. As shown by the decision in the case of Prentice v. McKay, supra, and following the applicable portion of that decision which is still the law in this state, the plaintiff has not established a right to an easement over any portion of the lands of the defendant or to the springs in question.

It is generally held that the rights of an appropriator of water are limited to the natural condition of the stream at the time the appropriation is made. Compare Rock Creek Ditch & Flume Co. v. Miller, 93 Mont. 248, 17 Pac. (2d) 1074, 89 A.L.R. 200; Beaverhead Canal Co. v. Dillon Electric Light & Power Co., 34 Mont. 135, 85 Pac. 880.

The fact that the plaintiff has been fully aware of the necessity of his obtaining an easement over the land of the defendant, in order to obtain full use of the waters of the springs, is indicated by the showing in the record of this case that in 1919 he brought an action for the purpose of condemning a right-of-way and to obtain an easement over the lands of the defendant to make use of the waters of the springs in question. In the complaint signed by him and filed in said cause, he stated that he did not at that time have any right of easement for either ditches or fences upon the lands where the springs are located, and asked for condemnation of a right-of-way and to have appraisers appointed to fix the value thereof. This action was dismissed by the court for want of prosecution. There is nothing in the record to show plaintiff ever obtained an easement over the land of defendant to conduct

water by ditch, except such, if any, obtained by way of prescriptive rights.

In this case, the defendant has listed as one of her specifications of error, the failure of the trial court to strike a portion of the reply of the plaintiff. It is the contention of the defendant that such reply was a departure from the allegations of the complaint which sought to quiet title to water, whereas the reply attempted to claim an easement of plaintiff over the premises of the defendant by prescription. While there is merit in the contention of the defendant, we do not think it is necessary to decide the question. This is a proceeding in equity. The court is able to decide the rights of the parties based upon the undisputed evidence and the admission of the defendant that the plaintiff is entitled to the use of the waters from the springs, in question, as they reach Bynum Springs Coulee in their natural state after crossing over the land of the defendant. Thus the defendant's rights are established as contended by her and no injury results from failure to pass on the merits of this specification of error.

Accordingly, we find that the district court was limited, under the facts shown in the record, to an adjudication that the plaintiff as against the defendant was entitled to the use of all of the waters of Bynum Springs after they left the defendant's land and flowed into Bynum Coulee, and to enjoin the interference by the defendant with the natural flow of said waters. The district court was in error in holding that the plaintiff had a right to go upon the land of the defendant for the purpose of fencing, making ditches, or otherwise interfering with the natural flow of the waters of these springs. It likewise erred in holding that the plaintiff had the exclusive right to the use of all of the waters of Bynum Springs for domestic purposes, for the watering of sheep, cattle and livestock, insofar as such statement applies to the water prior to the time that it leaves the land owned by the defendant. We do not find anything in the record which justified the court in issuing an injunction or that any acts were shown by com-

petent evidence to have been done by the defendant which were wrongful or to which plaintiff had any legal right to object and therefore the district court erred in the issuance of an injunction. Specifically there was no proof of recent acts of defendant which would justify injunctive relief. The fact that defendant's hogs interfered with the use of the springs some six years before this action was started, if they did so, is too remote in time to justify the court's action. The record shows the plaintiff had not complained of any act of defendant in two years before the action was initiated.

The judgment is reversed with instructions to enter a judgment not inconsistent with this opinion. Defendant will recover her costs both in this court and in the court below.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES, ANGSTMAN, and ADAIR, concur.